OPINION *Page 2 
{¶ 1} Defendant-appellant Jerry L. Linkous appeals his April 7, 2008 conviction entered by the Licking County Court of Common Pleas. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} This matter arises out of a series of incidents involving the breaking and entering, theft and robbery of a residence and several businesses in the Newark, Ohio area. The following evidence was adduced at the trial in this matter:
 FAMILY DOLLAR {¶ 3} Patrolman Shawn Trotter of the City of Newark testified he was working on July 13, 2006, when he received an alarm call from the Family Dollar Store located at 1036 Mount Vernon Road. He testified he received the call at 3:49 a.m. Footprints at the scene led up to the roof, where the police found a hole in the ceiling of the store. A floor safe from inside the store had been removed.
 {¶ 4} Colette Fournier, the manager of the Family Dollar Store, testified the store safe had been stolen during hours when the store was closed and unoccupied. The safe contained approximately $1,100 in cash.
 {¶ 5} Casey Frankenberry, a friend of Appellant's, testified Appellant admitted breaking into the Family Dollar Store, entering through the roof and stealing the money. *Page 3 
 {¶ 6} Angie Miller, an acquaintance of Appellant's, testified Appellant also admitted to her he broke into the store.
 {¶ 7} Appellant consented to a polygraph examination with regard to the Family Dollar incident, and was found to be deceptive when denying he was responsible for the breaking and entering.
 SUBWAY STORE {¶ 8} Jessica Norris testified she worked at the Subway store located in Heath, Ohio. She stated, on September 15, 2006, an unknown person came into the store, brandishing a knife and demanding money. She placed the money in a plastic Subway bag, and gave it to the assailant.
 {¶ 9} Amanda Turner testified at trial, she previously dated Appellant on the date of the Subway incident, and Appellant came home with a clear Subway bag filled with money. Upon her questioning him, Appellant admitted to robbing the Subway store.
 {¶ 10} Casey Frankenberry testified Appellant also told him he robbed the Subway store.
 {¶ 11} Again, Appellant consented to a polygraph examination, which indicated Appellant was being deceptive when he denied his involvement with the Subway robbery.
 LIQUIDS BAR {¶ 12} Tracy Bracaloni is the manager of Liquids Bar, on Cherry Valley Road in Licking County, Ohio. She testified someone broke into and robbed the bar on two occasions. She indicated on one occasion a monitor inside the bar had been damaged. *Page 4 
 {¶ 13} Angie Miller testified she broke into the bar with Appellant on two occasions. The first time Appellant used a crow bar to force open the back door, and damaged a monitor inside.
 {¶ 14} During the second break in at Liquids Bar, a hole was cut into the wall of an adjacent building in order to gain access to the bar. Angie Miller testified at trial, she again accompanied Appellant during that breaking and entering, and Appellant cut the hole in the wall.
 KAR SALES {¶ 15} Tyler Farquhar testified he owns Kar Sales in Newark, Ohio. He stated, on November 6, 2006, a 1992 Camaro was stolen after someone had broke into the business' building, where the key was kept. The person had kicked out the air conditioning above the back door to gain access to the building.
 {¶ 16} Casey Frankenberry testified Appellant admitted to him breaking and entering into Kar Sales, and the theft of the vehicle.
 {¶ 17} Angie Miller testified she and Appellant broke into Kar Sales, and stole several keys for vehicles on the lot. She testified they stole the Camaro and a Ford Explorer.
 BROOKS' RESIDENCE {¶ 18} Ed Brooks testified with regard to a burglary at his residence, indicating Appellant was familiar with the home. Angie Miller testified she and Appellant broke into the residence, stealing credit cards. *Page 5 
 CEMETERY HOUSE {¶ 19} Alma Hartman testified she is the caretaker and resides at the cemetery house located on Cedar Hill Street, Newark, Ohio. On November 15, 2006, she discovered someone had broken into her home and stolen jewelry and a pillowcase. Sergeant Brnjic, a detective with the Newark Police Department, testified he recovered several items stolen during the robbery from a search of Appellant's residence. Appellant admitted to being present outside the home during the crime.
 {¶ 20} Casey Frankenberry testified Appellant talked to him about wanting to burglarize homes in the private cemetery.
 {¶ 21} Angie Miller testified she and Appellant broke into the cemetery home and stole a safety deposit box and pillowcase with jewelry. Again, the results of a polygraph test indicated Appellant was being deceptive in denying he committed the burglary.
 MONTESSORI SCHOOL {¶ 22} William Moore testified at trial he is the manager of the Montessori School in Newark, Ohio. On November 6, 2006, a security alarm was activated at the school. Moore discovered somebody had removed an air conditioning unit in order to gain entrance to the building. Several checks and a camera were stolen from the building. Again, Angie Miller testified she and Appellant broke into the Montessori School. Amanda Turner testified she worked at the school, and Appellant had asked her where the office was located in the school. *Page 6 
 FRANKENBERRY RESIDENCE {¶ 23} Don Frankenberry testified at trial a firearm was taken from his residence in December of 2006. A .32 caliber handgun belonging to Don Frankenberry was recovered from Appellant's residence.
 {¶ 24} Amanda Turner testified she had seen Appellant with the firearm.
 {¶ 25} Casey Frankenberry testified he provided Appellant with the information regarding his father's firearm in exchange for $100 cash.
 {¶ 26} On June 8, 2007, the Licking County Grand Jury indicted Appellant on one count of aggravated robbery, in violation of R.C. 2911.01; seven counts of breaking and entering, in violation of R.C. 2911.13, one count of grand theft (motor vehicle), in violation of R.C. 2913.02; two counts of grand theft (firearm), in violation of R.C. 2913.02; one count of theft, in violation of R.C. 2913.02; two counts of burglary, in violation of R.C. 2911.12; two counts of having weapons while under disability, in violation of R.C. 2923.13; firearm specifications as to Counts 9, 10, 11 and 18 and one count of engaging in a pattern of corrupt activity, in violation of R.C. 2923.32.
 {¶ 27} Prior to trial, Appellant entered a plea of guilty to Counts 14 (Receiving stolen property pertaining to Hartman residence); 16 (Breaking and Entering of Jug'z Bar); and 17 (Receiving stolen property pertaining to Jug'z Bar Breaking and Entering); and was sentenced accordingly. A jury trial on the remaining charges commenced on April 1, 2008. Following the close of the State's evidence, the trial court granted Appellant's Rule 29 motion for acquittal as to Counts 2 (August 3, 2006 Family Dollar breaking and entering); 3 (August 10, 2006 Family Dollar breaking and entering); and 11 *Page 7 
(Grand Theft (firearm) of Brooks residence). The jury returned findings of guilt as to the remaining charges:
 {¶ 28} Counts 1, 5, 6, 7, and 15, Breaking and Entering;
 {¶ 29} Count 4, Aggravated Robbery;
 {¶ 30} Count 8, Grand Theft (Motor Vehicle), with a special finding the property involved was a motor vehicle;
 {¶ 31} Counts 9 and 13, Burglary;
 {¶ 32} Count 10, Theft, with a special finding the property involved was a credit card;
 {¶ 33} Count 18, Grand Theft (Firearm), with a special finding the property involved was a firearm and a further special finding Appellant did have a firearm on or about his person or under his control while committing the offense;
 {¶ 34} Count 20, Engaging in a Pattern of Corrupt Activity, with a special finding the most serious offense in the pattern of corrupt activity was a felony of the first degree, to wit: Count 4.
 {¶ 35} Appellant waived his right to a jury trial on Counts 12 and 19. Thereafter, the trial court found Appellant not guilty as to Count 12 (weapons under disability with regard to Brooks residence), but guilty as to Count 19 (weapons under disability pertaining to breaking and entering of Jug'z Bar.)
 {¶ 36} Appellant now appeals the verdicts, assigning as error:
 {¶ 37} "I. THE EVIDENCE WAS LEGALLY INSUFFICIENT TO SUPPORT APPELLANT'S CONVICTIONS. *Page 8 
 {¶ 38} "II. THE COURT ERRONEOUSLY OVERRULED APPELLANT'S MOTIONS FOR ACQUITTAL PURSUANT TO CRIMINAL RULE 29.
 {¶ 39} "III. APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 40} "IV. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY DENYING APPELLANT'S MOTION FOR A MISTRIAL DUE TO HIS MISTAKENLY APPEARING IN HANDCUFFS AND SHACKLES IN FRONT OF THE JURY."
 {¶ 41} In his supplemental brief, Appellant adds the following assignments of error:
 {¶ 42} "V. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR WHEN IT FAILED TO INSTRUCT THE JURY THAT IT MUST FIND THE STRUCTURE OF AN ENTERPRISE BE SEPARATE AND APART FROM THE PREDICATE ACTS.
 {¶ 43} "VI. APPELLANT'S CONSTITUTIONAL RIGHT TO PRESENT A DEFENSE WAS VIOLATED WHEN THE TRIAL COURT DID NOT PERMIT HIM TO CALL A WITNESS WHO WOULD TESTIFY TO A SEARCH WARRANT EXECUTED AT A RESIDENCE THAT WOULD TEND TO ESTABLISH THIRD PARTY GUILT."
 I, II, and III {¶ 44} Appellant's first, second and third assignments of error raise common and interrelated issues; therefore, we will address the arguments together.
 {¶ 45} A review of the sufficiency of the evidence and a review of the manifest weight of the evidence are separate and legally distinct determinations. State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52, 678 N.E.2d 541, superseded by constitutional amendment on other grounds as stated by State v. Smith, *Page 9 80 Ohio St.3d 89, 1997-Ohio-355, 684 N.E.2d 668. "While the test for sufficiency requires a determination of whether the State has met its burden of production at trial, a manifest weight challenges questions whether the State has met its burden of persuasion." State v. Thompkins, supra at 78 Ohio St.3d 390.
 {¶ 46} In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this Court must review the evidence in a light most favorable to the prosecution. State v.Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492 superseded by State constitutional amendment on other grounds as stated in State v.Smith (1997), 80 Ohio St.3d 89, 684 N.E.2d 668.
 {¶ 47} Specifically, an appellate court's function, when reviewing the sufficiency of the evidence to support a criminal conviction, is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v. Jenks, supra. This test raises a question of law and does not allow the court to weigh the evidence. State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Thompkins, 78 Ohio St.3d at 386,678 N.E.2d 541.
 {¶ 48} In State v. Thompkins supra, the Ohio Supreme Court held "[t]o reverse a judgment of a trial court on the basis that the judgment is not sustained by sufficient evidence, only a concurring majority of a panel of a court of appeals reviewing the judgment is necessary."Id. at paragraph three of the syllabus. However, to "reverse a judgment of a trial court on the weight of the evidence, when the judgment results from *Page 10 
a trial by jury, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required." Id.
at paragraph four of the syllabus; State v. Miller (2002), 96 Ohio St.3d 384,2002-Ohio-4931 at ¶ 38, 775 N.E.2d 498.
 {¶ 49} An appellate court reviews a denial of a Crim. R. 29 motion for acquittal using the same standard used to review a sufficiency of the evidence claim. See State v. Carter (1995), 72 Ohio St.3d 545, 553,651 N.E.2d 965, 1995-Ohio-104. Thus, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus."
 {¶ 50} Our standard of review on a manifest weight challenge to a criminal conviction is stated as follows: "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717. See, also, State v. Thompkins (1997),78 Ohio St.3d 380, 678 N.E.2d 541. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175, 485 N.E.2d 717.
 {¶ 51} Appellant's first three assignments of error assert,
 {¶ 52} ". . . there was no physical evidence linking appellant to any of the crimes alleged. There were no eyewitnesses, no fingerprints, no DNA and no shoe prints matching shoes recovered from the appellant. Virtually every witness that testified *Page 11 
against appellant either used drugs, had criminal records, had deals with the prosecutor and/or allegedly participated in the criminal activity themselves.
 {¶ 53} "* * *
 {¶ 54} "Given the lack of physical evidence, it would have been improper for the jury to rely on such questionable evidence as the polygraph to base its decision. Given the lack of physical evidence, the unreliability of polygraph examinations and the credibility issues associated with many of the witnesses, there was not sufficient, credible evidence to find appellant committed these crimes."
 {¶ 55} Again, as set forth above, the credibility of witnesses and weight of the evidence are issues primarily for the trier of fact.In re Ohler, Hocking App. No. 04CA8, 2005-Ohio-1583, ¶ 15, citingSeasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80,461 N.E.2d 1273.
 {¶ 56} Further, circumstantial evidence and direct evidence inherently possess the same probative value. State v. Jenks (1991),61 Ohio St.3d 259. The Supreme Court held in Jenks,
 {¶ 57} "In some instances certain facts can only be established by circumstantial evidence. Hence, we can discern no reason to continue the requirement that circumstantial evidence must be irreconcilable with any reasonable theory of an accused's innocence in order to support a finding of guilt. We agree with those courts that have held that an additional instruction on the sufficiency of circumstantial evidence invites confusion and is unwarranted. Since circumstantial evidence and direct evidence are indistinguishable so far as the jury's fact-finding function is concerned, all that is required of the jury is that it weigh all of the evidence, direct and circumstantial, against *Page 12 
the standard of proof beyond a reasonable doubt. Nothing more should be required of a factfinder. See State v. Derouchie, supra; State v. Roddy,supra; and State v. Gosby, supra."
 {¶ 58} We note, Appellant does not specifically challenge the weight or sufficiency of the evidence with regard to a specific, individual offense. Rather, Appellant generally maintains his convictions were against the manifest weight and sufficiency of the evidence.
 {¶ 59} Upon review of the record and as set forth in the statement of facts and case, supra, we find Appellant's convictions were supported by competent, credible evidence sufficient for the trier of fact to find Appellant guilty beyond a reasonable doubt of the crimes charged. We cannot say the jury lost its way, particularity in light of Appellant's repetitive modus operandi and multiple admissions of guilt to numerous people.
 {¶ 60} Appellant's first, second and third assignments of error are overruled.
 IV. {¶ 61} In the fourth assignment of error, Appellant maintains the trial court erred in not declaring a mistrial due to Appellant's mistakenly appearing in handcuffs and shackles in front of the jury. Specifically, Appellant argues the jury's view of him in handcuffs and shackles violated his Sixth Amendment right to a fair trial; therefore, the trial court should have declared a mistrial.
 {¶ 62} The grant or denial of a mistrial rests within the sound discretion of the trial court. State v. Sage (1987), 31 Ohio St.3d 173,182. Moreover, mistrials need be declared only when the ends of justice so require and a fair trial is no longer possible. *Page 13 State v. Franklin (1991), 62 Ohio St.3d 118. "An appellate court will not disturb the exercise of that discretion absent a showing that the accused has suffered material prejudice." Sage, supra at 182.
 {¶ 63} In State v. Nields (2001), 93 Ohio St.3d 6, the Ohio Supreme Court addressed the issue raised herein:
 {¶ 64} "In proposition XXX, defendant contends that he was denied a fair trial when the trial court failed to conduct a hearing or issue a curative instruction when it learned that several of the jurors saw him in shackles. This apparently occurred right before closing arguments of the mitigation phase around lunch break. Although the trial court noted this in the record, nothing more about the incident appears in the transcript.
 {¶ 65} "Defendant fails to demonstrate prejudicial error and simply asserts that he was prejudiced. However, the risk of prejudice is slight where a juror's view of a defendant in custody is brief, inadvertent, and outside the courtroom, as this apparently was. See State v.Kidder (1987), 32 Ohio St.3d 279, 285-286, 513 N.E.2d 311, 318;Landrum, 53 Ohio St.3d at 118-119, 559 N.E.2d at 724. Thus, we overrule proposition XXX." Id. at 31-32.
 {¶ 66} In State v. Spees (Dec. 29, 2003) Stark App. No. 2002CA00420, this Court held:
 {¶ 67} "Ordinarily, because shackles tend to erode the presumption of innocence, an accused should be allowed to appear at trial unfettered.State v. Carter (1977), 53 Ohio App.2d 125, 372 N.E.2d 622. However, the inadvertent sighting by jurors of a handcuffed accused outside of the courtroom does not create a per se mistrial. Ohio courts have held that the accused must present evidence that the jury was tainted by *Page 14 
the sighting. State v. Payton (Aug. 8, 1994), Fayette App. No. 93-12-028. In that regard, the Ohio Supreme Court has noted that "the danger of prejudice to defendants is slight where a juror's view of defendants in custody is brief, inadvertent and outside the courtroom."State v. Kidder (1987), 32 Ohio St.3d 279, 286, 513 N.E.2d 311. If jurors have inadvertently seen a defendant outside of a courtroom, while the defendant is in handcuffs, the proper procedure is for the trial court to voir dire the jury and give a cautionary instruction. SeeState v. Chitwood (1992), 83 Ohio App.3d 443, 449, 615 N.E.2d 257. That is what in essence happened here. Further, even if the trial court did commit an error, such error is not grounds for reversal unless it was prejudicial. Id.
 {¶ 68} "* * *
 {¶ 69} "First, we note that there is nothing on the record to indicate that the jurors actually saw that appellant was handcuffed. The trial court stated that its investigation revealed that the deputies did not believe that the jury could tell appellant was handcuffed because of the way she was handcuffed. Appellant's counsel did not argue otherwise and the parties, including appellant's counsel, agreed to a cautionary instruction. Further, the trial court attempted to fashion a cautionary instruction that would instruct the jury without highlighting the fact that appellant was handcuffed. This is particularly important if in fact none of the jurors actually saw that appellant was handcuffed. Finally, all of the jurors indicated that they had not been nor would be influenced by what they saw when they evacuated the building and the trial court gave a curative instruction to avoid any possible influence from what they saw that day." Spees, supra at 7. *Page 15 
 {¶ 70} Further, similar to the case sub judice, this Court held inState v. Lovsey, (April 23, 2004), Fairfield App. No. 03CA1, 2004-Ohio-2112:
 {¶ 71} "The Fourth Assignment of Error is predicated on the possibility of at least one juror having observed Appellant in shackles while being transported between the courtroom and the jail. Appellant moved for a mistrial after presentation of the evidence but did not desire a voir dire of any member of the jury (Tr.796) nor a curative instruction. (Tr. 796).
 {¶ 72} "* * * While the court, in denying the motion for mistrial made the assumption that such may have occurred, nothing in the record so indicates. For purposes of this Court's review of the claim, we are limited to the record rather than joining in the assumption but if we also choose to assume, the Ohio Supreme Court, in the capital murder case of State v. Nields, 93 Ohio St.3d 6, 752 N.E.2d 859, stated:
 {¶ 73} "Trial court's failure in capital murder case to conduct a hearing or issue curative instruction upon learning that several jurors saw defendant in shackles just before closing arguments in mitigation phase did not deny defendant a fair trial; defendant simply asserted he was prejudiced by that incident without demonstrating prejudice, and risk of prejudice was slight in any event, considering that jurors' view of defendant in custody was brief, inadvertent and outside the courtroom." Lovsey, supra at ¶ 62-65.
 {¶ 74} In the case sub judice, the trial court offered to give a curative instruction, but cautioned Appellant as to the effect thereof. The following exchange occurred during trial: *Page 16 
 {¶ 75} "Mr. Sutton: Your Honor, I think I need to put something on the record at this point. When the jury walked in this morning, Mr. Linkous was still in leg shackles and also in handcuffs. They had ample opportunity to view him as such and, therefore, I'm going to move for a mistrial.
 {¶ 76} "The Court: Response?
 {¶ 77} "* * *
 {¶ 78} "Mr. Frost: State would argue that even if said opportunity existed, there's no evidence that they did, in fact, see any shackles or handcuffs, and in the event that even they did, the Court could give the curative instruction for that, but without having actual knowledge that they did, in fact, observe the handcuffs or the shackles, the State would be opposed to any mistrial.
 {¶ 79} "The Court: Well, let the record reflect that it's clear that when the jury came in, the defendant was standing and he had shackles on his legs. He had handcuffs on his hands, which were in front of him when defendant was standing. They obviously were in clear view of the — of the jury. And I don't know that every juror saw it, but there was certainly the opportunity to see what was — what was there. However, there was no — obviously the defendant and his counsel knew that he had handcuffs and shackles on before the jury was brought in and there was no request that the Court is aware of to have those removed before the jury came in. That could have been done and perhaps should have been done. The Court was unaware of it, and I can give an instruction to the jury if counsel for the defense would ask me to do that asking them that if they did see these, to please disregard and not in any way have that affect their decision in this case. *Page 17 
 {¶ 80} "Mr. Sutton: No, Your Honor. We'd ask for no curative instruction.
 {¶ 81} "The Court: You do not want me to give one? It would have the tendency to highlight. Very well, the Court will honor that. The Court would deny the motion for the mistrial."
 {¶ 82} Tr. at 900-902.
 {¶ 83} Appellant declined the trial court's offer of a curative instruction to minimize any possible prejudice. Because the "opportunity" to see Appellant in shackles and handcuffs was brief and inadvertent, we conclude the trial court did not abuse its discretion in overruling Appellant's motion for a mistrial.
 {¶ 84} The fourth assignment of error is overruled.
 V. {¶ 85} In the fifth assignment of error, Appellant asserts the trial court's instruction to the jury on the charge of corrupt activities was improper.
 {¶ 86} Appellant was charged with violation of R.C. 2923.32(A)(1) for engaging in a pattern of corrupt activity. The statute reads:
 {¶ 87} "(A)(1) No person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity or the collection of an unlawful debt"
 {¶ 88} The trial court instructed the jury as follows:
 {¶ 89} "Enterprise. Enterprise includes any individual or sole proprietorship, partnership, limited partnership, corporation, trust, union, governmental agency and any other legal entity or any organization, association or group of persons associated in fact, although not a legal entity. Enterprise includes illicit as well as licit enterprises. *Page 18 
Elements that must be satisfied for the finding of an enterprise — for finding that an enterprise exists are, one, an ongoing organization; two, with associates that function as a continuing unit.
 {¶ 90} "Finding. If you find that the State proved beyond a reasonable doubt all the essential elements of engaging in a pattern of corrupt activity as charged in the 20th count of the indictment, your verdict must be guilty.
 {¶ 91} "If you find that the State failed to prove beyond a reasonable doubt any one of the essential elements of engaging in a pattern of corrupt activity as charged in the 20th count of the indictment, your verdict must be not guilty.
 {¶ 92} "Special finding. If you find the defendant guilty of engaging in a pattern of corrupt activity, you will separately determine whether the most serious offense in the pattern of corrupt activity was or was not a felony of the first degree, to wit: Count 4.
 {¶ 93} "If you find the defendant not guilty of engaging in a pattern of corrupt activity, you need not make this determination."
 {¶ 94} Initially, we note, Appellant did not object to the instruction as given; thereby, waiving all but plain error.
 {¶ 95} Appellant maintains the prosecution must prove the enterprise is separate and apart from the predicate offense. United States v.Turkette (1981), 452 U.S. 576. Appellant cites the Tenth District Court of Appeals decision in State v. Warren (1992), Franklin App. No. 92AP-603, which held:
 {¶ 96} "Defendant contends that, since the five predicate acts upon which the indictment was based were not shown to have involved Mohammed Saaty, the person alleged to be involved in the criminal enterprise with defendant, there was no proof of a *Page 19 
criminal enterprise and the charge should have been dismissed. He argues that the criminal charges which constituted the pattern of corrupt activity cannot be used to establish the criminal enterprise.
 {¶ 97} "* * *
 {¶ 98} "In United States v. Riccobene (C.A. 3, 1984), 709 F.2d 214, at 222-223, the court stated:
 {¶ 99} "`* * * The `ongoing organization' requirement relates to the superstructure or framework of the group. To satisfy this element, the government must show that some sort of structure exists within the group for the making of decisions, whether it be hierarchical or consensual. There must be some mechanism for controlling and directing the affairs of the group on an on-going, rather than an ad hoc, basis. This does not mean that every decision must be made by the same person, or that authority may not be delegated.
 {¶ 100} "'* * *
 {¶ 101} "The second necessary element for an enterprise underRICO is that `the various associates function as a continuing unit.' * * * This does not mean that individuals cannot leave the group or that new members cannot join at a later time. It does require, however, that each person perform a role in the group consistent with the organizational structure established by the first element and which furthers the activities of the organization.
 {¶ 102} "'* * * *Page 20 
 {¶ 103} "The third and final element in establishing the enterprise is that the organization must be `an entity separate and apart from the pattern of activity in which it engages.' * * * `
 {¶ 104} "Even if defendant was operating a criminal organization by himself in 1982 when those offenses were committed, the fact remains that there was ample proof that defendant and Saaty were involved together in an enterprise of criminal activity which meets all the standards set forth in Roccobene from 1984 thereafter and in the commission of many of the other counts of the indictment, which were incorporated into the predicate acts provision.
 {¶ 105} "In summary, the testimony was that defendant was involved in over nine hundred burglaries over a course of fifteen or eighteen years. There was substantial testimony that he and Saaty were, in effect, masterminding or planning these burglaries in a course of continuing criminal activity. Thus, there was sufficient evidence of an enterprise with Saaty for the purpose of engaging in corrupt activities from 1984 on, even though there was not evidence that the enterprise involved Saaty prior to that time. Hence, the evidence was not just that defendant and others had committed a number of crimes, but also that there was an ongoing enterprise of the type referred to in the definition of a "pattern of corrupt activity" set forth in R.C. 2923.31(E), as follows:
 {¶ 106} "``Pattern of corrupt activity' means two or more incidents of corrupt activity, whether or not there has been a prior conviction, that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event.' *Page 21 
 {¶ 107} "It is not necessary that the predicate acts be separate types of offenses but they may consist of a pattern of the same kinds of criminal acts. See United States v. Bledsoe (C.A.8, 1982), 674 F.2d 647;United States v. Elliott (C.A.5, 1978), 571 F.2d 880.
 {¶ 108} "The jury found that all of the predicate acts, for which convictions were returned, were related to and in furtherance of the criminal enterprise of defendant and Mohammed Saaty. The evidence supporting the finding of a criminal enterprise consisted not only of the evidence of the commission, together with specific crimes, but also of the testimony concerning the control of the organization by Warren and Saaty, their recruiting of the complicitors, their planning of the crimes, and their division of the spoils.
 {¶ 109} "In United States v. Turkette (1981), 452 U.S. 576,101 S.Ct. 2524, the United States Supreme Court stated that an illegal enterprise is "proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." Turkette, at 583. The court went on to explain that proof used to establish the enterprise may, in fact, coalesce with the proof used to establish the pattern of corrupt activity."
 {¶ 110} Appellant argues the trial court erred in not instructing the jury as to the third prong demonstrating a structure separate and apart, or distinct, from the pattern of corrupt activity.
 {¶ 111} The Ninth District Court of Appeals addressed this issue inState v. Wilson (1996), 113 Ohio App.3d 737, *Page 22 
 {¶ 112} "Defendant has argued that there was insufficient evidence to convict him of engaging in a pattern of corrupt activity and conspiracy to engage in a pattern of corrupt activity because the state did not prove that he was employed by or associated with an enterprise that was separate and apart from the pattern of corrupt activity in which it allegedly engaged. Defendant's argument derives from a discussion inUnited States v. Turkette (1981), 452 U.S. 576, 101 S.Ct. 2524,69 L.Ed.2d 246, about what the federal government must prove in order to sustain a conviction under the Racketeer Influenced and Corrupt Organizations Act, Section 1961 et seq., Title 18, U.S. Code:
 {¶ 113} "`* * * In order to secure a conviction under RICO, the Government must prove both the existence of an `enterprise' and the connected `pattern of racketeering activity.' The enterprise is an entity, for present purposes a group of persons associated together for a common purpose of engaging in a course of conduct. The pattern of racketeering activity is, on the other hand, a series of criminal acts as defined by the statute. The former is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit. The latter is proved by evidence of the requisite number of acts of racketeering committed by the participants in the enterprise. While the proof used to establish these separate elements may in particular cases coalesce, proof of one does not necessarily establish the other. The `enterprise' is not the `pattern of racketeering activity'; it is an entity separate and apart from the pattern of activity in which it engages. The existence of an enterprise at all times remains a separate element which must be proved by the Government.' (Citations omitted.) 452 U.S. at 583,101 S.Ct. at 2528-2529, 69 L.Ed.2d at 254-255. *Page 23 
 {¶ 114} "Pursuant to R.C. 2923.32(A)(1), a defendant may be convicted of conspiracy to engage in a pattern of corrupt activity and engaging in a pattern of corrupt activity if the state proves that he or she was part of an "enterprise" that engaged in the underlying offenses. To meet this burden, the state must establish that the defendant was employed by or associated with an "enterprise." Under the statute, an "enterprise" is "any individual, sole proprietorship, partnership, limited partnership, corporation, trust, union, government agency, or other legal entity, or any organization, association, or group of persons associated in fact although not a legal entity." R.C. 2923.31(C). It includes both licit and illicit enterprises. Id. Ohio courts, unlike their federal counterparts, have not defined "enterprise" in such a way that a defendant may be convicted of those offenses only if he or she was associated with an "enterprise" that had an existence separate and apart from the corrupt activity. State v. Habash (Jan. 31, 1996), Summit App. No. 17073, unreported, 1996 WL 37752. Rather, a defendant may be convicted of those offenses if he was employed by or associated with an entity that meets the statutory definition of an "enterprise." Seeid.
 {¶ 115} "Since Ohio courts have not required that an "enterprise" have an existence separate and apart from the underlying corrupt activity, defendant's convictions were supported by sufficient evidence. Defendant's first assignment of error is overruled."
 {¶ 116} In accord with the Ninth District's holding inWilson, we do not find Appellant has demonstrated plain error as a result of the trial court's instruction of the jury on the offense of engaging in a pattern of corrupt activity. The fifth assignment of error is overruled. *Page 24 
 VI. {¶ 117} In the sixth assignment of error, Appellant argues the trial court denied his constitutional right to call witnesses in not permitting him to call Officer Satterfield to testify as to a search warrant executed at a residence of a third party.
 {¶ 118} Upon review of the record, assuming arguendo the trial court erred in denying Appellant the opportunity to present Officer Satterfield, without a proffer of said testimony, Appellant has not demonstrated prejudice as a result of the alleged error.
 {¶ 119} The sixth assignment of error is overruled.
Hoffman, J. Farmer, PJ. and Gwin, J. concur. *Page 25 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Licking County Court of Common Pleas is affirmed. Costs to Appellant. *Page 1