[Cite as *State v. Crites*, 2019-Ohio-4729.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES: |
| | Hon. William B. Hoffman, P.J |
| Plaintiff-Appellee | Hon. Craig R. Baldwin, J. |
| | Hon. Earle E. Wise, Jr., J. |
| -vs- | |
| | Case No. 2019 AP 03 0010 |
| WILLIAM E. CRITES | |
| Defendant-Appellant | O P I N IO N |

CHARACTER OF PROCEEDINGS:     Appeal from the New Philadelphia
                             Municipal Court, Case No. 1801520 A-C

JUDGMENT:                     Affirmed

DATE OF JUDGMENT ENTRY:       November 14, 2019

APPEARANCES:

For Plaintiff-Appellee                  For Defendant-Appellant

DOUGLAS V. JACKSON                      JAMES J. ONG
Dover City Prosecutor                   201 North Main Street
339 Oxford Street                       Uhrichsville, Ohio  44683
Dover, Ohio  44622

*Hoffman, P.J.*

{¶1}   Defendant-appellant William E. Crites appeals his convictions and sentence entered by the New Philadelphia Municipal Court, which found him guilty following acceptance of his no contest pleas.  Plaintiff-appellee is the State of Ohio.

### STATEMENT OF THE CASE AND FACTS

{¶2}   On March 18, 2018, Appellant was cited for operating a motor vehicle under the influence of alcohol, in violation of R.C. 4511.19(A)(1)(a) and (A)(2)(b), as well as a violation of Dover Codified Ord. 337.03(A).  Appellant appeared for arraignment on March 22, 2018, and entered a plea of not guilty.

{¶3}   Appellant filed a motion to suppress on May 10, 2018, arguing the law enforcement officer lacked probable cause to stop Appellant's vehicle as said vehicle had two headlights and the officer lacked a sufficient basis to request Appellant submit to field sobriety tests.  The magistrate conducted a hearing on the motion on July 19, 2018.

{¶4}   City of Dover Police Officer Ryan Porter testified he was on routine patrol during the early morning hours of March 18, 2018.  At approximately 1:42 a.m., Officer Porter was driving on Tuscarawas Avenue, Dover, Tuscarawas County, Ohio, when he observed a Jeep with what he perceived to be only one functioning headlight traveling northbound.  The officer pulled into a parking lot and waited for the vehicle to drive past him.  When the Jeep travelled past him, Officer Porter confirmed the vehicle had only one functioning headlight.  Officer Porter indicated he could not recall whether the vehicle had fog or running lights illuminated.  Officer Porter pulled out behind the Jeep and initiated a traffic stop.  At no point from his initial observation of the Jeep to his initiation of the stop did Officer Porter lose sight of the vehicle.

{¶5} Officer Porter approached the vehicle and made contact with the driver, who was identified as Appellant. There were two other occupants in the vehicle, a female in the front passenger's seat and a male in the rear of the vehicle. The officer's vehicle was equipped with an operational recording system on the night in question. A copy of the video was offered and admitted as State's Exhibit A.

{¶6} On cross-examination, Officer Porter acknowledged, as he watched the video, he could observe a white illuminating light on the right side of the vehicle as well as a white illuminating light on the left side of the vehicle. Officer Porter conceded he did not measure the distance of the lights from the ground. On redirect, the officer noted, "From what I'm looking at now it appears that I would say there's a fog light on the right side of the vehicle. They don't seem to be – the light on the right is not as high as the one on the left so I would assume that that would be a fog light underneath the headlight." Tr. of Suppression Hearing at 10.

{¶7} Via Decision filed August 9, 2018, the magistrate recommended a finding Officer Porter had probable cause to initiate a stop of Appellant's vehicle to investigate the traffic violation. The magistrate found a trained police officer has the ability to visually observe a vehicle to determine whether said vehicle has properly functioning headlights as required by law, and based upon such visual observation, the officer has probable cause to initiate a stop to investigate. Appellant filed a timely objection to the magistrate's decision.

{¶8} Via Judgment Entry filed November 5, 2018, the trial court approved and adopted the magistrate's decision in its entirety. The trial court found Appellant was stopped after he was observed by Officer Porter operating his vehicle after dark without

two working headlights, in violation of Dover Cod. Ord. 337.03(A). The trial court further found Appellant's vehicle had two fog lights, but only one functioning headlight. The trial court concluded Officer Porter had a reasonable suspicion and probable cause to determine a traffic violation occurred.

{¶9} Appellant appeared before the trial court on February 14, 2019, to enter a change of plea. Per the parties' negotiations, the State moved to amend the original citation from a violation of R.C. 4511.19(A)(2)(b) to a violation of R.C. 4511.19(A)(2)(a), and to merge the R.C. 4511.19(A)(2)(a) violation with the R.C. 4511.19(A)(1)(a) violation. The trial court granted the motion. Thereafter, Appellant entered a pleas of no contest. The trial court accepted Appellant's pleas and found him guilty of R.C. 4511.19(A)(2)(a) and Dover Cod. Ord. 337.03(A). The trial court sentenced Appellant to 365 days in jail and fined him $850.00. The trial court ordered Appellant serve 60 days, suspended the remaining 305 days, and placed Appellant on community control for 36 months.

{¶10} It is from his convictions and sentence Appellant appeals, raising as his sole assignment of error:


THE TRIAL COURT ERRED BY RULING THAT THERE WAS PROBABLY CAUSE TO STOP APPELLANT'S VEHICLE AND CONDUCT A WARRANTLESS SEARCH AND SEIZURE OF APPELLANT.


I.

{¶11} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In

reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein*, 73 Ohio App.3d 486, 597 N.E.2d 1141(1991); *State v. Guysinger*, 86 Ohio App.3d 592, 621 N.E.2d 726(1993). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. *State v. Williams*, 86 Ohio App.3d 37, 619 N.E.2d 1141 (1993). Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 641 N.E.2d 1172 (1994); *State v. Claytor*, 85 Ohio App.3d 623, 620 N.E.2d 906 (1993); *Guysinger, supra.* As the United States Supreme Court held in *Ornelas v. U.S.*, 517 U.S. 690, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996), "... as a general matter determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal."

{¶12} When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate the credibility of witnesses. See *State v. Dunlap,* 73 Ohio St.3d 308, 314, 1995–Ohio–243, 652 N.E.2d 988; *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982).

{¶13} Appellant submits the police video "clearly shows that [his] vehicle was equipped with two (2) lights which meet the criteria of headlights as established in Ohio Administrative Code Section 4501-15-01." Brief of Appellant at 7. Appellant explains Ohio Administrative Code Section 4501-15-01 "does not require that the headlights be the same height on either side of the vehicle" rather the code section establishes "a height requirement for the placement of a headlight". *Id.* Appellant adds Officer Porter did not take any steps to confirm whether the headlights on Appellant's vehicle complied with Ohio law; therefore there was no evidence the headlights on his vehicle were not in conformity with Ohio Administrative Code Section 4501-15-01. Appellant concludes the officer's "mistake of law regarding what constitutes a headlight under Ohio law thereby eliminates Officer Porter's contention that probable cause existed for the warrantless stop and seizure of [Appellant]." *Id.* at 8. We disagree.

{¶14} It is well established an officer may stop a motorist upon his or her observation the vehicle in question violated a traffic law. *Dayton v. Erickson*, 76 Ohio St.3d 3, 11-12, 665 N.E.2d 1091 (1996). "[E]ven a de minimis traffic violation provides probable cause for a traffic stop." *Id.* at 9. "Trial courts determine whether any violation occurred, not the extent of the violation." *State v. Hodge*, 147 Ohio App.3d 550, 2002-Ohio-3053, 771 N.E.2d 331, ¶ 27. Moreover, an officer is not required to prove the suspect committed an offense beyond a reasonable doubt or even satisfy the lesser standard of probable cause to believe the defendant violated the law. *Westlake v. Kaplysh*, 118 Ohio App.3d 18, 20, 691 N.E.2d 1074 (1997)

{¶15} To conduct a constitutionally valid investigatory stop, a police officer must be able to point to specific and articulable facts which, taken together with rational

inferences derived from those facts, give rise to a reasonable suspicion that the individual has committed, is committing, or is about to commit a crime. *State v. Williams*, 51 Ohio St.3d 58, 60, 554 N.E.2d 108 (1990). The propriety of an investigative stop by a police officer must be viewed in light of the totality of the circumstances. *State v. Freeman*, 64 Ohio St.2d 291, 414 N.E.2d 1044 (1980), paragraph one of the syllabus.

**{¶16}** Upon his initial observation of Appellant's vehicle on the night in question, Officer Porter perceived Appellant's vehicle had only one functioning headlight. The officer then pulled into a parking lot and waited for the vehicle to pass. Officer Porter then confirmed his first perception the vehicle had only one functioning headlight. Although as he watched the dash cam video during the suppression hearing, Officer Porter acknowledged he could observe a white illuminating light on the right side of the vehicle as well as a white illuminating light on the left side of the vehicle, on redirect, the officer noted, "From what I'm looking at now it appears that I would say there's a fog light on the right side of the vehicle. They don't seem to be – the light on the right is not as high as the one on the left so I would assume that that would be a fog light underneath the headlight." Tr. of Suppression Hearing at 10.

**{¶17}** The focus is whether Officer Porter had reasonable suspicion for the traffic stop at the time of the stop. The officer's testimony, as believed by the court, sufficiently established he observed only one headlight on Appellant's vehicle. This testimony was enough to establish a reasonable suspicion a violation occurred; therefore, we find Officer Porter's stop of Appellant's vehicle lawful.

**{¶18}** In his brief, Appellant cites *State v. Chatton,* 11 Ohio St.3d 59, 463 N.E.2d 1237 (1984), in support of his position Officer Porter's detention of him exceeded the constitutionally permissible scope. We find *Chatton* to be factually distinguishable.

**{¶19}** In *Chatton,* a police officer stopped the defendant for a suspected failure to display license plates. *Id.* at 59. Upon approaching the vehicle, the officer noticed a temporary tag was visible in the rear windshield. *Id.* Nonetheless, the officer continued to the driver's side of defendant's vehicle and requested the defendant to produce his driver's license. *Id.* The officer subsequently learned the defendant's license was suspended and placed the defendant under arrest for driving while under a suspension. *Id.* The defendant was ordered to step out of his vehicle, was patted down, and was handcuffed. *Id.* Upon searching the passenger compartment of the vehicle, the officer discovered a loaded Charter Arms .44 Special revolver underneath the driver's seat. *Id.*

**{¶20}** The defendant was indicted for carrying a concealed weapon. *Id.* He moved to suppress evidence of the gun on the basis the search of his vehicle was unlawful. *Id.* at 59-60. The trial court overruled the motion to suppress. *Id.* at 60. The defendant then entered a plea of no contest to the charge in the indictment and a judgment of conviction was entered thereon. *Id.* The court of appeals reversed the conviction, finding the trial court erred in not suppressing the evidence of the gun. *Id.* The court of appeals reasoned any reasonable suspicion the defendant was violating the law was extinguished upon the officer's observance of the temporary tag and the detention of the defendant beyond that moment was unlawful. *Id.* The Ohio Supreme Court accepted jurisdiction.

**{¶21}** The *Chatton* Court held:

Consequently, where a police officer stops a motor vehicle which displays neither front nor rear license plates, but upon approaching the stopped vehicle observes a temporary tag which is visible through the rear windshield, the driver of the vehicle may not be detained further to determine the validity of his driver's license absent some specific and articulable facts that the detention was reasonable. As a result, any evidence seized upon a subsequent search of the passenger compartment of the vehicle is inadmissible under the Fourth Amendment to the United States Constitution. *Id.* at 63.

**{¶22}** The *Chatton* Court found "because the police officer no longer maintained a reasonable suspicion that appellee's vehicle was not properly licensed or registered, to further detain appellee and demand that he produce his driver's license is akin to [a] random detention[.]" *Id.* The Court then concluded, "[a]lthough the police officer, as a matter of courtesy, could have explained to appellee the reason he was initially detained, the police officer could not unite the search to this detention, and appellee should have been free to continue on his way without having to produce his driver's license." *Id.*

**{¶23}** Unlike the officer in *Chatton*, Officer Porter maintained a reasonable suspicion Appellant's vehicle did not have two functioning headlights and, as such, could detain Appellant further. We find Officer Porter did not exceed the constitutionally permissible scope of the detention. The officer was not required to take measurements of the light to confirm his suspicion, his visual observation was enough.

**{¶24}** Based upon the foregoing, we find the trial court did not err in denying Appellant's motion to suppress.

**{¶25}** Appellant's sole assignment of error is overruled.

**{¶26}** The judgment of the New Philadelphia Municipal Court is affirmed.


By: Hoffman, P.J.

Baldwin, J.  and

Wise, Earle, J. concur