[Cite as *State v. Carney*, 2023-Ohio-1801.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | Hon. John W. Wise, J.<br>Hon. Andrew J. King, J. |
| -vs- | |
| | Case No. 2022 CA 0046 |
| THOMAS CARNEY | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:      Criminal Appeal from the Court of Common Pleas, Case No. 2022 CR 0003


JUDGMENT:      Affirmed


DATE OF JUDGMENT ENTRY:      May 30, 2023


APPEARANCES:

For Plaintiff-Appellee             For Defendant-Appellant

JODIE SCHUMACHER             DARIN AVERY
ACTING PROSECUTING ATTORNEY    104 Sturges Avenue
MATTHEW C. METCALF            Mansfield, Ohio 44903
ASSISTANT PROSECUTOR
38 South Park Street
Mansfield, Ohio 44902

*Wise, J.*

{¶1}   Appellant Thomas Carney appeals his conviction and sentence entered in the Richland County Common Pleas Court on May 23, 2022, following a jury trial

{¶2}   Appellee is the state of Ohio.

STATEMENT OF THE FACTS

{¶3}   For purposes of this Opinion, the relevant facts and procedural history are as follows:

{¶4}   On December 21, 2021, Officer Clay Blair observed a vehicle traveling eastbound on Marion Avenue in Mansfield, Ohio, with only one functioning headlight so he initiated a traffic stop. (Supp. T. at 8-12). The driver of the vehicle admitted to law enforcement that the headlight was not working, stating that he had hit a deer not long ago. (Supp. T. at 36). Upon approaching the vehicle, Officer Blair observed the driver, later identified as Appellant Thomas Carney, making furtive movements reaching toward the center console and toward his leg. (Supp.T. at 14, T. at 89). Appellant gave consent to search his vehicle. (Supp. T. at 14, T. at 92). When Officer Blair's backup arrived, a search of the vehicle was conducted and a loaded firearm, a Sig Sauer P228, was found on the front passenger seat.  (Supp. T. at 14-15). Also found in the vehicle, on top of the firearm, was an envelope which contained Appellant's W-2, his high school transcript, and a bill of sale that documented that Appellant purchased the firearm. (Supp. T. at 16; T. at 98, 175-177). This documentation was also seized. (T. at 98). Officer Blair read Appellant his Miranda rights and asked him about the gun. (Supp. T. at 16).  Appellant denied that the gun belonged to him. *Id.*

{¶5}   On January 20, 2022, Appellant was indicted on one count of Improperly Handling Firearms in a Motor Vehicle, in violation of R.C. §2923.16, a fourth-degree felony, and one count of Carrying a Concealed Weapon, in violation of R.C. §2923.12, also a fourth-degree felony. The state additionally sought forfeiture of the firearm under R.C. §2941.1417.

{¶6}   On March 25, 2022, Appellant filed a motion to suppress.

{¶7}   On April 26, 2022, the trial court held a hearing on Appellant's motion to suppress.

{¶8}   On May 9, 2022, the trial court denied the motion to suppress.

{¶9}   On May 16-18, 2022, the matter proceeded to jury trial.

{¶10}  On the first day of trial, Appellant was disruptive in the courtroom and tried to fire his counsel before the end of the questioning of the first witness, in front of several jury members, before the trial court had an opportunity to dismiss the jury. (T. at 99).

{¶11}  On the second day of trial, the trial court had Appellant drug tested in the court's probation department, which was located across the hall from the courtroom. (T. at 120). Appellant tested positive for methamphetamines. *Id.*

{¶12}  While Appellant was being escorted across the lobby and back to the courtroom, five of the thirteen jurors saw him in handcuffs. (T. at 122). As a result, Appellant made a *pro se* motion for a mistrial, which was denied by the trial court

{¶13}  Following the presentation of evidence, the state dismissed the concealed weapon charge.

{¶14} Following deliberations the jury returned a guilty verdict on the charge of Improper Handling of Firearms in a Motor Vehicle and also found the firearm subject to forfeiture.

{¶15} By Judgment Entry filed May 23, 2022, the trial court sentenced Appellant to sixteen (16) months in prison and ordered the firearm forfeited to the state of Ohio.

{¶16} Appellant now appeals, raising the following errors for review:

<u>ASSIGNMENTS OF ERROR</u>

{¶17} "I. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS EVIDENCE OBTAINED DURING AN ILLEGAL TRAFFIC STOP.

{¶18} "II. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR A MISTRIAL BASED ON MULTIPLE JURORS SEEING HIM IN HANDCUFFS.

{¶19} "III. THE TRIAL COURT ERRED IN FAILING TO CONSIDER CARNEY'S MILITARY SERVICE RECORD WHEN SENTENCING AS REQUIRED BY R.C. 2929.12(F)."

**I.**

{¶20} In his first assignment of error, Appellant argues the trial court erred in denying his motion to suppress. We disagree.

{¶21} There are three methods of challenging a trial court's ruling on a motion to suppress on appeal. First, an appellant may challenge the trial court's finding of fact. In reviewing a challenge of this nature, an appellate court must determine whether the trial court's findings of fact are against the manifest weight of the evidence. See *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein*, 73 Ohio App.3d 486, 597 N.E.2d 1141 (4th Dist.1991). Second, an appellant may argue the trial court failed to

apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See *Williams*, supra. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issues raised in a motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 96, 641 N.E.2d 1172 (8th Dist.1994). As the United States Supreme Court held in *Ornelas v. U.S.*, 517 U.S. 690, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996), "... as a general matter determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal."

{¶22} When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate the credibility of witnesses. See *State v. Dunlap*, 73 Ohio St.3d 308, 314, 1995-Ohio-243, 652 N.E.2d 988; *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982).

{¶23} In this case, Appellant argues the trial court incorrectly decided the ultimate or final issues raised in her motion to suppress.

{¶24} Appellant herein was stopped for operating a vehicle with only one working headlight.

{¶25} Appellant herein submits that although the headlight on the left side of the vehicle may not have been working, the fog light was working and therefore Officer Blar did not have probable cause to believe a traffic violation had occurred..

{¶26} It is well established an officer may stop a motorist upon his or her observation the vehicle in question violated a traffic law. *Dayton v. Erickson*, 76 Ohio

St.3d 3, 11-12, 665 N.E.2d 1091 (1996). "[E]ven a de minimis traffic violation provides probable cause for a traffic stop." *Id.* at 9. "Trial courts determine whether any violation occurred, not the extent of the violation." *State v. Hodge*, 147 Ohio App.3d 550, 2002-Ohio-3053, 771 N.E.2d 331, ¶ 27. Moreover, an officer is not required to prove the suspect committed an offense beyond a reasonable doubt or even satisfy the lesser standard of probable cause to believe the defendant violated the law. *Westlake v. Kaplysh*, 118 Ohio App.3d 18, 20, 691 N.E.2d 1074 (1997)

**{¶27}** To conduct a constitutionally valid investigatory stop, a police officer must be able to point to specific and articulable facts which, taken together with rational inferences derived from those facts, give rise to a reasonable suspicion that the individual has committed, is committing, or is about to commit a crime. *State v. Williams*, 51 Ohio St.3d 58, 60, 554 N.E.2d 108 (1990). The propriety of an investigative stop by a police officer must be viewed in light of the totality of the circumstances. *State v. Freeman*, 64 Ohio St.2d 291, 414 N.E.2d 1044 (1980), paragraph one of the syllabus.

**{¶28}** Here, Officer Blair testified that upon his initial observation of Appellant's vehicle on the night in question, he perceived Appellant's vehicle had only one functioning headlight. The officer then initiated a traffic stop during which Appellant admitted that one of the vehicle's headlights was not working. While watching the dash cam video during the suppression hearing, Officer Blair acknowledged he could observe a white illuminating beam of light on the right side of the vehicle, with no beam of light on the left side except for a little light which he explained was possibly a fog light underneath the headlight. (Supp. T. at 18-19). Officer Blair testified that this is a traffic violation for operating a vehicle with a non-working headlight. (Supp. T. at 19).

**{¶29}** The focus of our review is whether Officer Blair had reasonable suspicion for the traffic stop at the time of the stop. The officer's testimony, as believed by the court, sufficiently established he observed only one headlight on Appellant's vehicle. This testimony was enough to establish a reasonable suspicion that a violation occurred; therefore, we find Officer Blair's stop of Appellant's vehicle lawful. See *State v. Crites*, 5th Dist. Tuscarawas No. 2019 AP 03 0010, 2019-Ohio-4729 (trial court found officer's visual observation of non-working headlight, even with an illuminated fog light, constituted reasonable suspicion of a traffic violation.)

**{¶30}** Traffic stops based upon observation of a traffic violation are constitutionally permissible. *Dayton v. Erickson,* 76 Ohio St.3d 3, 11–12, 1996-Ohio-431, 665 N.E.2d 1091. This Court has held that any traffic violation, even a *de minimis* violation, may form a sufficient basis upon which to stop a vehicle. *State v. Bangoura,* 5th Dist. No. 08 CA 95, 2009-Ohio-3339, 2009 WL 1916902, ¶ 14, citing *State v. McCormick,* 5th Dist. No.2000CA00204, 2001 WL 111891 (Feb. 2, 2001); *State v. Woods*, 5th Dist. Licking No. 12-CA-19, 2013-Ohio-1136, 2013 WL 1209351, ¶ 60.

**{¶31}** Appellant's first assignment of error is overruled.

**II.**

**{¶32}** In his second assignment of error, Appellant argues the trial court erred in denying his motion for a mistrial after several jurors saw him in shackles.

**{¶33}** The granting of a mistrial rests within the sound discretion of the trial court as it is in the best position to determine whether the situation at hand warrants such action. *State v. Glover* (1988), 35 Ohio St.3d 18, 517 N.E.2d 900; *State v. Jones* (1996) 115 Ohio App.3d 204, 207, 684 N.E.2d 1304, 1306.

**{¶34}** "A mistrial should not be ordered in a criminal case merely because some error or irregularity has intervened * * *." *State v. Reynolds* (1988), 49 Ohio App.3d 27, 33, 550 N.E.2d 490, 497. The granting of a mistrial is necessary only when a fair trial is no longer possible. *State v. Franklin* (1991), 62 Ohio St.3d 118, 127, 580 N.E.2d 1, 9; *State v. Treesh* (2001), 90 Ohio St.3d 460, 480, 739 N.E.2d 749, 771. When reviewed by the appellate court, we should examine the climate and conduct of the entire trial, and reverse the trial court's decision as to whether to grant a mistrial only for a gross abuse of discretion. *State v. Draughn* (1992), 76 Ohio App.3d 664, 671, 602 N.E.2d 790, 793-794, citing *State v. Maurer* (1984), 15 Ohio St.3d 239, 473 N.E.2d 768, certiorari denied (1985), 472 U.S. 1012, 105 S.Ct. 2714, 86 L.Ed.2d 728; *State v. Gardner* (1998), 127 Ohio App.3d 538, 540-541, 713 N.E.2d 473, 475; *State v. Conley,* Richland App. No.2009-CA-19, 2009-Ohio-2903 at ¶ 20.

**{¶35}** Specifically, Appellant argues that a mistrial should have been granted after several jurors saw him in shackles.

**{¶36}** In *State v. Spees* (Dec. 29, 2003) Stark App. No. 2002CA00420, this Court held:

> Ordinarily, because shackles tend to erode the presumption of innocence, an accused should be allowed to appear at trial unfettered. *State v. Carter* (1977), 53 Ohio App.2d 125, 372 N.E.2d 622. However, the inadvertent sighting by jurors of a handcuffed accused outside of the courtroom does not create a per se mistrial. Ohio courts have held that the accused must present evidence that the jury was tainted by the sighting. *State v. Payton* (Aug. 8, 1994), Fayette App. No. 93-12-028. In that regard,

the Ohio Supreme Court has noted that "the danger of prejudice to defendants is slight where a juror's view of defendants in custody is brief, inadvertent and outside the courtroom." *State v. Kidder* (1987), 32 Ohio St.3d 279, 286, 513 N.E.2d 311. If jurors have inadvertently seen a defendant outside of a courtroom, while the defendant is in handcuffs, the proper procedure is for the trial court to voir dire the jury and give a cautionary instruction. See *State v. Chitwood* (1992), 83 Ohio App.3d 443, 449, 615 N.E.2d 257. That is what in essence happened here. Further, even if the trial court did commit an error, such error is not grounds for reversal unless it was prejudicial. *Id.*

*State v. Linkous*, 5th Dist. Licking No. 08CA51, 2009-Ohio-1896, ¶¶ 66-67

**{¶37}** In the instant case, the trial court, after conducting a *voir dire* of the jurors, found that only five (5) of the thirteen (13) jurors stated that they briefly saw Appellant in handcuffs and that such would not affect their ability to make a determination of guilt or innocence in the trial. (T. at 137-155).

**{¶38}** The trial court, in denying his motion for a mistrial, found that the sighting was inadvertent and brief and that a curative instruction was sufficient.

**{¶39}** Upon review, because the observation of Appellant in shackles was brief and inadvertent, and because Appellant has failed to demonstrate prejudice, we conclude the trial court did not abuse its discretion in overruling Appellant's motion for a mistrial.

**{¶40}** Appellant's second assignment of error is overruled.

**III.**

**{¶41}** In his third assignment of error, Appellant argues that the trial court failed to consider his military service when imposing sentence. We disagree.

**{¶42}** Unless otherwise required by R.C. §2929.13 or §2929.14, a court imposing a felony sentence "has discretion to determine the most effective way to comply" with these purposes and principles of sentencing. R.C. §2929.12(A). R.C. §2929.12 sets forth a non-exhaustive list of factors the trial court must consider when imposing a sentence.

**{¶43}** R.C. §2929.12(A) provides that a court imposing a sentence on a felony offender "shall consider" the factors set forth in R.C. §2929.12(B) and (C) "relating to the seriousness of the conduct," the factors provided in R.C. §2929.12(D) and (E) "relating to the likelihood of the offender's recidivism" and the factors set forth in R.C. §2929.12(F) pertaining to the offender's military service, if any. "[I]n addition," the trial court "may consider any other factors that are relevant to achieving those purposes and principles of sentencing." R.C. §2929.12(A).

**{¶44}** Upon review, we find that Appellant's trial counsel addressed Appellant's military service at the sentencing hearing when he informed the court that Appellant was in the West Virginia National Guard for one year and that he was honorably discharged. (T. at 423).

**{¶45}** Further, the May 23, 2022, sentencing entry states that the trial court considered the principles and purposes of sentencing as set forth in R.C. §2929.11 and the seriousness and recidivism factors set forth in R.C. §2929.12.

**{¶46}** Based on the foregoing, we find that Appellant has not shown that the trial court failed to consider R.C. §2929.11 or §2929.12 prior to imposing sentence.

**{¶47}** Appellant's third assignment of error is overruled.

**{¶48}** The judgment of the Court of Common Pleas of Richland County, Ohio, is affirmed.

By: Wise, J.

Gwin, P. J., and

King, J., concur.

JWW/kw  0525