[Cite as *State v. Woods*, 2013-Ohio-1136.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellee | : | Hon. W. Scott Gwin, J. |
| | : | Hon. William B. Hoffman, J. |
| -vs- | : | |
| | : | Case No. 12-CA-19 |
| BOBBY E. WOODS | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:      Appeal from the Licking County County
Court of Common Pleas, Case No. 11 CR
00459


JUDGMENT:      REVERSED IN PART, AFFIRMED IN
PART, AND REMANDED


DATE OF JUDGMENT ENTRY:      February 26, 2013


APPEARANCES:

For Appellant:

DAVID B. STOKES
21 W. Church St., Suite 206
Newark, OH 43055

For Appellee:

KENNETH W. OSWALT
LICKING COUNTY PROSECUTOR
EARL L. FROST
20 S. Second Street, 4th Floor
Newark, OH 43055

*Delaney, J.*

{¶1} Appellant Bobby E. Woods appeals from the March 1, 2012 judgment entry of conviction and sentence upon one count of possession of marijuana before the Licking County Court of Common Pleas. Appellee is the state of Ohio.

*FACTS AND PROCEDURAL HISTORY*

{¶2} This case arose on August 28, 2011 as Trooper Michael Wilson of the Ohio State Highway Patrol performed routine patrol duties in uniform and in a marked OSHP cruiser. Sgt. Cosgrove, Wilson's supervisor, accompanied him and the two patrolled the eastbound lane of I-70.

{¶3} Wilson noticed a Ford F150 truck within less than two car lengths of a semi truck, committing the traffic offense of following too closely. The F150 traveled at a speed of 64-65 m.p.h., and it was too close to the vehicle in front of it for the speed traveled. Wilson also noted the driver of the vehicle seemed nervous, gripping the steering wheel at "10 and 2," rigid in his seat and "wide-eyed."

{¶4} Wilson followed the vehicle approximately three quarters of a mile, then dropped back and activated his overhead lights to initiate a traffic stop. The driver, later identified as appellant, pulled to the right berm and stopped. Wilson approached the vehicle and noted two occupants: appellant and David Starcher.

{¶5} Appellant seemed extremely nervous. Wilson intended "most likely" to cite him for following too close, but upon speaking with appellant he

immediately noticed loose marijuana in plain view inside the crevice of the handle of the passenger-side door. Wilson didn't feel comfortable leaving appellant and Starcher inside the vehicle so asked them both to step out and Mirandized them.

{¶6} Starcher exited the vehicle first. Upon a search of his person, Starcher was found to have a bag of marijuana (which he freely admitted to). Appellant is paralyzed from the chest down and thus was helped out of the vehicle last so that he could be placed into a wheelchair.

{¶7} After the occupants were removed, Cosgrove retrieved a black bag from behind the driver's seat. Wilson testified it was evident from the strong odor that the bag contained marijuana. Inside the black bag were four separate bags of marijuana. The vehicle search also yielded a plastic bag containing bank withdrawal slips and deposit envelopes, along with $1,758 in cash in a plastic shopping bag in the driver's-side compartment. The search also yielded an "owe list" listed by denominations of transactions.

{¶8} Appellant told investigators the cash was to purchase his "medicine:" marijuana.

{¶9} Of the marijuana recovered, two bags were attributed to Starcher: the loose marijuana recovered from the door handle and the bag found in his pocket. The remaining marijuana found in the vehicle, which totaled over 200 grams, was attributed to appellant. Wilson testified appellant admitted the marijuana was his and said Starcher didn't know anything about it.

{¶10} Appellant was cited by uniform traffic citation with one count of following too close.

*Appellant's Testimony at the Suppression Hearing*

{¶11} Appellant denied he followed any vehicle too closely on I-70 prior to the traffic stop. Appellant insisted Wilson could not have seen any marijuana in plain view inside the vehicle because it was contained within four separate bags zipped up inside the black duffel bag on the floorboard behind the passenger seat. Although appellant denied there was any marijuana in the passenger-side door handle, he admitted Starcher "had a couple bags on him" and "probably" had a "couple of joints." He further admitted a cigarette pack between the seat and the console had a few "roaches" in it. Appellant was confident the trooper could not have seen any marijuana in plain view because upon being pulled over, he told Starcher to put everything away so nothing could be seen. Appellant also claimed he never gave anyone consent to search the vehicle and that the amount of cash in the freezer bag was closer to $3000, not $1758.

{¶12} Upon cross examination appellant admitted he and Starcher were smoking marijuana during their drive, and that it was possible loose marijuana could be throughout the interior of the vehicle without appellant being aware of it. Appellant also agreed Wilson did Mirandize him and he understood the rights he waived by making a statement.

*Indictment, Forfeiture Specification, and Plea*

{¶13} Appellant was charged by indictment with one count of possession of marijuana in an amount exceeding two hundred grams but less than one thousand grams, a violation of R.C. 2925.11(A)(C)(3)(c) and a felony of the fifth degree. The indictment contained a forfeiture specification titled in the caption as "**Monies** & Motor Vehicle, O.R.C. 2981.02 and 2941.1417" (emphasis added) and stated the following:

> The Grand Jurors further find and specify that the said Defendant owned or possessed property, to-wit: a 2010 Ford F-150, Vin. No. 1FTFX1EV1AFB67501, and intended to use said property in any manner to commit, or facilitate the commission of a felony offense(s) or act(s) as set forth in Count One, in violation of Sections 2941.1417 and 2981.02 of the Ohio Revised Code.

{¶14} The trial court permitted appellant to enter written pleas of not guilty in lieu of personal appearance. In response to appellant's request, appellee provided a bill of particulars which stated the following in reference to the forfeiture specification:

> * * *.
>
> There is a forfeiture specification as to the sole count in the indictment, pursuant to section 2981.02 and 2941.1417, in that the monies ($1758) and vehicle (2010 Ford F150, Vin. No. 1FTFX1EV1AFB67501) were intended to be used in any manner to commit or facilitate a felony offense, or was

derived directly or indirectly from any proceeds obtained directly or indirectly from the commission of said offense.

* * *.

{¶15} On October 28, 2011, appellant filed a Motion to Suppress.

{¶16} On November 21, 2011, appellant filed a motion to return all of his cash that was seized, "approximately $2,800-$2,900," alleging the cash was not properly subject to forfeiture because it was not specified in the indictment. Appellee responded on November 23, 2011, acknowledging the cash was not specified in the indictment but arguing the cash was still subject to forfeiture because notice of such was given in the bill of particulars.

{¶17} On November 29, 2011, a hearing was held on appellant's motion to suppress. On January 9, 2012, the trial court issued a Judgment Entry overruling appellant's motion to suppress.

{¶18} On January 18, 2012, appellant filed a "Motion and Notice of Hearing" asking the trial court to rule on his November 21, 2011 motion to return the seized cash and to reconsider the motion to suppress. Also on that date, appellee dismissed the minor misdemeanor citation for following too closely because "the officer failed to appear for trial."

{¶19} On January 20, 2012, the trial court overruled appellant's motion of November 21, 2011, asking for the cash to be returned, and overruled appellant's motion of January 18, 2012.

{¶20} On January 23, 2012, appellee dismissed the forfeiture specification "as it relates to a 2010 Ford F150, Vin. No. 1FTFX1EV1AFB67501," and the trial court granted the motion.

{¶21} On February 29, 2012, appellant changed his plea to guilty. The trial court accepted appellant's guilty plea as charged, sentenced him to a term of six months in prison, three years of post-release control, and a driver's-license suspension of one year. The sentencing entry dated March 1, 2012 also states:

> * * *.
>
> Defendant shall pay all costs of prosecution and court costs in this action. The defendant shall pay court-appointed counsel costs and any fees permitted pursuant to R.C. Section 2929.18(A)(4) according to the defendant's ability to pay. A fine of $1,758.00 is imposed, which shall be satisfied by the same amount held as evidence by the Ohio State Highway Patrol, who shall pay that sum to the Clerk of Courts.
>
> * * *.

{¶22} Appellant now appeals from the trial court's judgment entry of March 1, 2012, finding appellant guilty of one count of possession of marijuana pursuant to R.C. 2925.11(A)(C)(3)(c), a felony of the fifth degree, sentencing him to a prison term of six months and requiring him to pay a fine of $1,758.00.

{¶23} Appellant raises eight Assignments of Error:

{¶24} "I.     THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION BY FAILING TO RETURN APPELLANT'S MONEY TO HIM AND/OR BY FINING APPELLANT."

{¶25} "II.    THE TRIAL COURT COMMITTED HARMFUL ERROR AND/OR ABUSED ITS DISCRETION BY DENYING APPELLANT'S MOTION TO SUPPRESS."

{¶26} "III.   THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION BY DENYING BRANCH II OF APPELLANT'S MOTION FILED OCTOBER 28, 2011."

{¶27} "IV.    THE TRIAL COURT COMMITTED HARMFUL ERROR AND/OR ABUSED ITS DISCRETION BY DENYING BRANCH III OF APPELLANT'S OCTOBER 28, 2011 MOTION."

{¶28} "V.     THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION IN FAILING TO ORDER APPELLANT'S MONEY BE RETURNED TO APPELLANT."

{¶29} "VI.    THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION IN DENYING BRANCH IV OF APPELLANT'S MOTION FILED OCTOBER 28, 2011."

{¶30} "VII.   THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION IN ITS SENTENCE OF APPELLANT."

{¶31} "VIII.  THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION IN SUSPENDING APPELLANT'S OPERATOR'S LICENSE FOR ONE (1) YEAR."

I., V.

{¶32} Appellant's first and fifth assignments of error address the trial court's forfeiture and disposition of the $1,758 seized from the traffic stop and will be considered together.  Appellant contends the trial court erred in refusing to return the cash to him and in fining him in the amount of the cash seized. While we find the cash was properly subject to forfeiture, the trial court erred in ordering the cash to be forfeited and assessing $1758 as appellant's fine.

*Procedural History of Appellant's Objections to Forfeiture*

{¶33} Appellant challenges the trial court's decision to forfeit the $1758 in cash on a number of bases.  While we ultimately agree that the trial court erred in forfeiting the cash and fining appellant without making appropriate findings, a review of the complicated procedural history of this forfeiture is in order.  Appellant entered a plea of no contest, but at each stage of the proceedings he challenged appellee's ability to forfeit the cash found during the traffic stop.

{¶34} Prior to the suppression hearing on November 29, 2011, appellant pointed out that he had filed a motion asking for the cash to be returned.  The trial court noted the motion had not been set for hearing, and stated that if appellee re-indicted appellant and included a specification regarding forfeiture of the cash, the motion would be moot.  No such re-indictment occurred.  On January 18, 2012, appellant moved the trial court to rule on his earlier motion to return the cash, and the trial court denied the motion on January 20, 2012.

{¶35} Also on January 18, 2012, appellant filed an affidavit of indigency stating that he is "paralyzed from his chest nipples to his feet," is not employed, has no income, and requested that the court impose no fine.

{¶36} On February 29, 2012, appellant appeared before the trial court for change of plea and sentencing. Defense trial counsel noted that appellant was indigent and had filed an affidavit to that effect. Defense trial counsel again noted the $1758 in cash was not part of the indictment and that a motion had been made to return the cash. The trial court noted the truck had been properly included in the indictment but was returned to appellant, and asked appellee whether the cash was properly subject to forfeiture if the cash was in the heading but not in the body of the indictment. Appellee responded, "Well, Judge, I think that if it's not in the indictment, the State is not so clearly entitled to forfeiture; however because it was seized property at the time of the event— and it sounds to me as though [appellant] has no objection—the State would ask perhaps that it not be forfeited, but that it be directed to the Ohio State Highway Patrol. * * *" (T. 23).

{¶37} Ultimately the trial court imposed a fine of $1758 plus court costs. The trial court noted it had considered a presentence investigation, but made no reference to any financial information contained therein.

*The Cash is Properly Subject to Forfeiture*

{¶38} Appellant insists the $1,758 in cash was not properly subject to forfeiture because it was not contained in the indictment. We disagree because

the cash was described in the bill of particulars and appellant had adequate and plentiful notice appellee intended to seek forfeiture of the cash.

{¶39} The $1,758 in cash is included in the heading of the indictment but is not specified within the body of the indictment. R.C. 2981.04(A)(2), though, states any property "not reasonably foreseen to be subject to forfeiture at the time of the filing of the indictment" may still be made subject to forfeiture provided the state gives prompt notice of this fact to the alleged offender pursuant to Crim.R. 7(E). See, *State v. Parker,* 8th Dist. No. 97988, 2012-Ohio-4820; *State v. North*, 1st Dist. No. C-120248, 2012-Ohio-5200. Appellee provided appellant with a bill of particulars noting the intent to seek forfeiture of the cash. Between the indictment and the bill of particulars, we find appellant was adequately notified appellee intended to seek forfeiture of the cash.

*Forfeiture Procedure Not Followed*

{¶40} We further find, however, that although the cash was properly subject to forfeiture, the trial court did not follow the statutory guidelines for criminal forfeiture and assessing fines against persons who have filed an affidavit of indigency, and we remand the matter to the trial court for those determinations.

{¶41} R.C. Chapter 2981 governs criminal and civil forfeitures. We apply a de novo standard of review upon to an appeal of the trial court's interpretation and application of a statute. *State v. Sufronko*, 105 Ohio App.3d 504, 506, 664 N.E.2d 596 (4th Dist.1995).

{¶42} Upon the commission of a criminal offense, "[a]law enforcement officer may seize property that the officer has probable cause to believe is property subject to forfeiture.* * * *" R.C. 2981.03(A)(2). The state acquires provisional title to property subject to forfeiture and may seize and hold the property until adjudication by means of a criminal forfeiture specification or a civil forfeiture proceeding. R.C. 2981.03(A)(1). A person aggrieved by an alleged unlawful seizure of property may file a motion seeking its return, which shall be treated as a motion to suppress evidence when the motion is filed subsequent to the indictment. R.C. 2981.03(A)(4). In this case, appellant filed a post-indictment motion to return the cash. A suppression hearing was held, but the issue of the cash was not addressed. Appellant repeatedly asked the trial court to resolve the motion to return the cash.

{¶43} R.C. 2981.04 (B) states in pertinent part:

> If a person pleads guilty to * * * an offense * * * and the * ** indictment * * * charging the offense or act contains a specification covering property subject to forfeiture under section 2981.02 of the Revised Code, the trier of fact shall determine whether the person's property shall be forfeited. If the state or political subdivision proves by a preponderance of the evidence that the property is in whole or part subject to forfeiture under section 2981.02 of the Revised Code, after a proportionality review under section 2981.09 of the Revised Code when relevant, the trier of fact

shall return a verdict of forfeiture that specifically describes

the extent of the property subject to forfeiture. * * * *.

{¶44} In this case, the trial court made no determination whether the cash was subject to forfeiture yet still ordered that amount paid as a fine, effectively forfeiting the cash. "The trial court did not conduct a hearing, find the property subject to forfeiture, or place on record an order of forfeiture." *State v. North*, 12th Dist. No. C-120248, 2012-Ohio-5200, ¶ 11. We have often noted that forfeitures are not favored in law or equity and are statutory provisions which must be strictly construed. *State v. Thompson*, 5th Dist. No. 03CA87, 2004-Ohio-7269, ¶ 32, citing *State ex rel. Lukens v. Industrial Commission*, 143 Ohio St. 609, 56 N.E.2d 216 (1994). Where the statutory requirements for forfeiture have not been met, we have no choice but to reverse the decision of the trial court and remand for further proceedings.

*No Assessment of Present and Future Ability to Pay*

{¶45} Nor was the $1,758 properly assessed as a fine because the record is devoid of any indication that the trial court considered appellant's present and future ability to pay the fine.

{¶46} This Court addressed the issue of an offender's ability to pay a fine or other financial sanction in *State v. Danison*, Ashland App. No. 03COA021, 2003-Ohio-5924, rev'd on other grounds, 105 Ohio St.3d 127, 2005-Ohio-781, 823 N.E.2d 444. See also, *State v.* Moody, 5th Dist. No. 09 CA 90, 2010-Ohio-3272; *State v. Riffle*, 5th Dist. No. 01 CA 53, 2002-Ohio-4265; *State v. Caudill*, 5th Dist. No. 03-COA-031, 2004-Ohio-2803.

{¶47} R.C. 2929.18(A) permits a trial court to impose a financial sanction and fine upon an offender who has committed a felony. However, before doing so, pursuant to R.C. § 2929.19(B)(5), the trial court is required to consider the offender's present and future ability to pay the amount of sanction or fine. Further, under R.C. 2929.18(E), a trial court may hold a hearing, if necessary, to determine whether the offender is able to pay the sanction or is likely in the future to be able to pay it.

{¶48} We have held there is no mandatory language in the statute for the trial court to conduct a hearing. *Moody*, supra, 2010-Ohio-3272 at ¶ 47, citing *State v. Berry*, 5th Dist. No. 01-CA-26, 2003-Ohio-167, at ¶ 21; *State v. Schnuck* (Sept. 25, 2000), 5th Dist. No.2000AP020016, at 1; *State v. Johnston* (July 26, 2000), 5th Dist. No. 99COA01333, at * 5. R.C. 2929.18 only requires a trial court judge to hold a hearing if there is an objection to the amount of restitution or the ability to pay. Here, defense trial counsel stated at the plea and sentencing hearing that appellant was unable to pay and had filed an affidavit of indigency.

{¶49} Before ordering an offender to pay restitution, R.C. 2929.19(B)(5) requires a court to consider the offender's present and future ability to pay the amount of the sanction or fine. When, however, a trial court imposes a financial sanction without any inquiry into the offender's present and future means to pay, the failure to make the requisite inquiry constitutes an abuse of discretion. *State v. Horton*, 85 Ohio App.3d 268, 271, 619 N.E.2d 527 (10th Dist.1993).

{¶50} In *Moody,* we held:

>While the better practice is for a trial court to explain on the record that it considered an offender's financial circumstance, courts have consistently held that a trial court need not explicitly state in its judgment that it considered a defendant's ability to pay a financial sanction. Rather, courts look to the totality of the record to see if this requirement has been satisfied.  It has been held that a court complies with Ohio law if the record shows that the court considered a pre-sentence investigation report that provides all pertinent financial information regarding an offender's ability to pay restitution. (Citations omitted.)
>
>*State v. Moody*, 5th Dist. No. 09 CA 90, 2010-Ohio-3272, at ¶ 51-52.

{¶51} In the instant case, the trial court referenced the pre-sentence investigation report but did not make any references to any financial information contained therein.   *Moody*, supra, 2010-Ohio-3272, ¶ 53.  We have reviewed the transcript of the plea and sentencing hearing, and the trial court's sentencing entry, but there is no evidence in the record the trial court considered appellant's present and future ability to pay the fine.

{¶52} We therefore reverse the imposition of the fine of $1,758 and remand this matter to the trial court for a determination of appellant's present and future ability to pay a fine.

{¶53} Appellant's fifth assignment of error asserts the trial court erred in not returning the cash to appellant.  This assignment of error is premature

based upon our determination that the trial court must determine whether the cash is subject to forfeiture upon application of the statutory forfeiture procedure and must assess appellant's present and future ability to pay a fine.

{¶54} Appellant's first assignment of error is sustained and his fifth assignment of error is overruled and the matter is remanded for proceedings consistent with this opinion.

## II., III., IV., VI.

{¶55} Appellant's second, third, fourth, and sixth assignments of error assert the trial court erred in overruling his motion to suppress and will be addressed together.  We find the trial court properly overruled the motion to suppress.

{¶56} Appellate review of a trial court's decision to deny a motion to suppress involves a mixed question of law and fact.  *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1 (4th Dist. 1998).  During a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility.  *State v. Brooks*, 75 Ohio St.3d 148, 154, 661 N.E.2d 1030 (1996).  A reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence.  *State v. Medcalf*, 111 Ohio App.3d 142, 145, 675 N.E.2d 1268 (4th Dist.1996).  Accepting these facts as true, the appellate court must independently determine as a matter of law, without deference to the trial court's conclusion, whether the trial court's decision meets the applicable

legal standard. *State v. Williams*, 86 Ohio App.3d 37, 42, 619 N.E.2d 1141 (4th Dist.1993), overruled on other grounds.

{¶57} There are three methods of challenging a trial court's ruling on a motion to suppress on appeal. First, an appellant may challenge the trial court's finding of fact. In reviewing a challenge of this nature, an appellate court must determine whether the trial court's findings of fact are against the manifest weight of the evidence. See, *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein*, 73 Ohio App.3d 486, 597 N.E.2d 1141 (1991). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See*, Williams*, supra. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issues raised in a motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 96, 620 N.E.2d 906 (8th Dist.1994).

*Stop and Arrest*

{¶58} First, appellant argues the trial court should have suppressed evidence resulting from the stop and arrest. We disagree. Appellant's second assignment of error argues the officer did not have reasonable suspicion to stop his vehicle and the stop was based upon a "hunch." His third assignment of error asserts he was unlawfully arrested on the basis of a minor misdemeanor

(following too close) while at the same time acknowledges Trooper Wilson's unequivocal testimony that he was arrested for possession of and trafficking in marijuana. Appellant's fourth assignment of error contends he was unlawfully detained upon being stopped for a minor misdemeanor traffic violation and should have been released upon completion of a traffic ticket. While these assignments of error and arguments in support are contradictory of each other, we have thoroughly reviewed the record of the suppression hearing and find the trial court properly overruled the motion to suppress on these bases.

{¶59} The Fourth Amendment to the United States Constitution prohibits warrantless searches and seizures, rendering them per se unreasonable unless an exception applies. *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507 19 L.Ed.2d 576 (1967). An investigative stop, or *Terry* stop, is a common exception to the Fourth Amendment warrant requirement. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 889 (1968). Because the "balance between the public interest and the individual's right to personal security" tilts in favor of a standard less than probable cause in such cases, the Fourth Amendment is satisfied if the officer's action is supported by reasonable suspicion to believe that criminal activity "may be afoot." *United States v. Brignoni-Ponce*, 422 U.S. 873, 878, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). In *Terry*, the Supreme Court held that a police officer may stop an individual if the officer has a reasonable suspicion based upon specific and articulable facts that criminal behavior has

occurred or is imminent. See, *State v. Chatton*, 11 Ohio St.3d 59, 61, 463 N.E.2d 1237 (1984).

{¶60} The propriety of an investigative stop must be viewed in light of the totality of the circumstances surrounding the stop "as viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Andrews*, 57 Ohio St.3d 86, 87-88, 565 N.E.2d 1271 (1991); *State v. Bobo*, 37 Ohio St.3d 177, 178, 524 N.E.2d 489 (1988). The Supreme Court of the United States has re-emphasized the importance of reviewing the totality of the circumstances in making a reasonable suspicion determination:

> When discussing how reviewing courts should make reasonable-suspicion determinations, we have said repeatedly that they must look at the "totality of the circumstances" of each case to see whether the detaining officer has a "particularized and objective basis" for suspecting legal wrongdoing. This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that "might well elude an untrained person." Although an officer's reliance on a mere "hunch" is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying

a preponderance of the evidence standard. *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct.744, 151 L.Ed.2d 740 (2002), citing *United States v. Cortez*, 449 U.S. 411, 417-418 (1981).

{¶61} Traffic stops based upon observation of a traffic violation are constitutionally permissible. *Dayton v. Erickson*, 76 Ohio St.3d 3, 11-12, 1996-Ohio-431, 665 N.E.2d 1091. This Court has held that any traffic violation, even a *de minimis* violation, may form a sufficient basis upon which to stop a vehicle. *State v. Bangoura*, 5th Dist. No. 08 CA 95, 2009-Ohio-3339, ¶ 14, citing *State v. McCormick*, 5th Dist. No. 2000CA00204, 2001 WL 111891 (Feb. 2, 2001). Wilson's observation of the following too close violation supports his stop of the motor vehicle and his testimony belies appellant's assertion that he was stopped based upon a mere "hunch" of criminal activity afoot.

{¶62} Appellant's remaining arguments as to the illegality of his arrest completely ignore the fact that Wilson observed marijuana in plain view in the vehicle, appellant and Starcher freely admitted to having marijuana, and four bags of marijuana were found in the duffle bag in black bag between the back seat and center console, bringing the total amount of marijuana attributed to appellant to over 200 grams. Moreover, Wilson attested that the smell of raw marijuana permeated the vehicle during the stop and search. The evidence in the record does not support appellant's repeated assertion he was arrested for the minor misdemeanor traffic offense.

*Statements*

{¶63} Finally with respect to suppression issues, appellant's sixth assignment of error asserts he was not properly Mirandized. We note Wilson testified both appellant and Starcher were Mirandized upon removal from the vehicle. Subsequent to being Mirandized, appellant told Wilson the marijuana was his "medicine" and he was using the cash to purchase marijuana. In his testimony at the suppression hearing, appellant acknowledged he was Mirandized and that he understood the rights he waived by speaking with troopers at the scene.

{¶64} In order for an accused's statement to be admissible at trial, police must have given the accused a Miranda warning if there was a custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436, 471, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). If that condition is established, the court can proceed to consider whether there has been an express or implied waiver of Miranda rights. Id. at 476. Appellant's argument seems to be that although appellant was Mirandized immediately prior to the arrest, he was not subsequently Mirandized. While appellant does not specifically articulate a staleness argument, we infer from his summary reasoning that the change in status from a quasi-custodial traffic stop to an arrest rendered the Miranda warnings stale. We disagree. In *State v. Roberts*, 32 Ohio St.3d 225, 513 N.E.2d 720 (1987), the Ohio Supreme Court applied a totality of the circumstances test and found that warnings given earlier had gone stale by the time the defendant made incriminating statements:

The following criteria are set forth: " * * * (1)[T]he length of time between the giving of the first warnings and subsequent interrogation, * * * (2) whether the warnings and the subsequent interrogation were given in the same or different places, * * * (3) whether the warnings were given and the subsequent interrogation conducted by the same or different officers, * * * (4) the extent to which the subsequent statement differed from any previous statements; * * * [and] (5) the apparent intellectual and emotional state of the suspect. * * *

*State v. Roberts*, 32 Ohio St.3d 225, 232, 513 N.E.2d 720 (1987), citations omitted.

In the instant case, the statements were made in the same location, within minutes, at the scene of the stop, questioning, search, and arrest. Appellant admitted upon cross examination that he was given the warnings and understood them. The record is devoid of any evidence which supports a staleness argument. The trial court did not err in finding that under the totality of the circumstances, appellant's Miranda warnings were neither stale nor insufficient.

{¶65} Wilson Mirandized appellant and Starcher upon their removal from the vehicle, after which he discovered the marijuana , paraphernalia, cash, deposit slips, and indicia of trafficking. Appellant subsequently told Wilson the marijuana was his "medicine" and purchase of marijuana was the purpose of his

trip.    Upon cross-examination at the suppression hearing, appellant acknowledged he was advised of his Miranda rights, understood them, and knew Starcher had marijuana on him.    Considering the totality of the circumstances, we find that Appellant's statements were voluntary and not in violation of Appellant's Fifth Amendment right against self-incrimination.

{¶66} The trial court properly overruled the motion to suppress. Appellant's second, third, fourth, and sixth assignments of error are overruled.

VII.

{¶67} In his seventh assignment of error, appellant summarily argues the trial court erred and abused its discretion in sentencing appellant to a fine of $1,758, in not giving appellant credit for jail time already served, and in imposing a "disproportionate sentence" in light of appellant's medical conditions and other sentences imposed by the trial court in similar cases.

{¶68} We addressed the propriety of appellant's fine in our discussion of the first assignment of error.    Appellant's remaining issues with his sentence are presented without authority, or with citations to inapplicable statutes.

{¶69} In *State v. Kalish*, the Ohio Supreme Court set forth a two step process for reviewing felony sentences. 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124. The first step is to "examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law." Id. at ¶ 4. If this first step "is satisfied," the second step requires the trial court's decision be "reviewed under an abuse-of-discretion standard." Id.    In this case, the

sentence was not contrary to law and is within the permissible range for a felony of the fifth degree.

{¶70} We further find the sentence is not an abuse of the trial court's discretion.  In order to find an abuse of discretion, the reviewing court must determine that the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment.  *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).  Here, the trial court noted this is not appellant's first trip to the institution, and he has previously been convicted of possession of controlled substances with intent to deliver.  Taken in context, we cannot find the trial court abused its discretion in sentencing appellant.

{¶71} Appellant's seventh assignment of error is overruled.

VIII.

{¶72} In his eighth assignment of error, appellant summarily argues the trial court abused its discretion in suspending his out-of-state operator's license. Again, appellant cites no legal authority in support of his position.

{¶73} Appellant's argument ignores the application of R.C. 4509.33, which specifically provides for suspension of a nonresident's privilege to operate a motor vehicle when the nonresident has been convicted of an offense for which the suspension of a license is provided.  Appellant was convicted upon one count of possession of marijuana pursuant to R.C. 2925.11(A)(C)(3)(c), which provides for a license suspension of six months to five years.  R.C. 2925.11(E)(2).

{¶74} Appellant's eighth assignment of error is overruled.

{¶75} Appellant's first assignment of error is sustained in part and overruled in part. Appellant's second, third, fourth, fifth, sixth, seventh, and eighth assignments of error are overruled. Accordingly, the judgment of the Licking County Court of Common Pleas is reversed in part, affirmed in part, and remanded for further proceedings in accord with this opinion.


By: Delaney, P.J.

Gwin, J. and

Hoffman, J. concur.

_____
HON. PATRICIA A. DELANEY

_____
HON. W. SCOTT GWIN

_____
HON. WILLIAM B. HOFFMAN

PAD:kgb

[Cite as *State v. Woods*, 2013-Ohio-1136.]

IN THE COURT OF APPEALS FOR LICKING COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | NUNC PRO TUNC |
| BOBBY E. WOODS | : | |
| | : | |
| | : | Case No. 12-CA-19 |
| Defendant-Appellant | : | |

The following judgment entry is entered nunc pro tunc due to an error in the original entry. For the reasons stated in our accompanying Opinion on file, the judgment of the Licking County Court of Common Pleas is affirmed in part, reversed in part, and remanded. Costs assessed equally between appellant and appellee.

_____
HON. PATRICIA A. DELANEY


_____
HON. W. SCOTT GWIN


_____
HON. WILLIAM B. HOFFMAN