[Cite as *In re S.H.*, 2013-Ohio-3708.]

COURT OF APPEALS
MEDINA COUNTY, OHIO
NINTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| IN RE: GUARDIANSHIP OF | : | JUDGES: |
| S.H. | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. William B. Hoffman, J. |
|  | : | Hon. John W. Wise, J. |
|  | : | Sitting by Supreme Court Assignment |
|  | : |  |
|  | : | Case No. 13CA0057-M |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Medina County Court of Common Pleas, Probate Division, Case No. 2013 07 GM 00029

JUDGMENT:      Reversed and Remanded

DATE OF JUDGMENT ENTRY:      August 27, 2013

APPEARANCES:

For- Applicant-Appellant Maria Schimer      For - Proposed Ward

CLAIR E. DICKINSON      SHORAIN L. MCGHEE
NICHOLAS P. CAPOTOSTO      4141 Rockside Road, Ste. 230
NICOLE SWEARINGEN-HILKER      Seven Hills, OH 44131
388 South Main Street, Ste. 500
Akron, OH 44311

Guardian Ad Litem      For – Andy and Anna H.

JENNIFER MATYAC      JOHN C. OBERHOLTZER
326 N. Court Street      39 Public Square, Ste. 201
Medina, OH 44256      Medina, OH 44256

*Gwin, P.J.*

{¶1}   Appellant Maria Schimer ["Schimer"] appeals the July 31, 2013 decision of the Medina County Probate Court denying her application for appointment of a limited guardian of the proposed ward, S.H.[1]., a minor child, for the limited purposes of making medical decisions. The appellees are Andy H. and Anna H. ["Parents"], the parents of the minor child.

*Facts and Procedural History*

{¶2}   On July 9, 2013, Schimer filed an application in the Medina County Probate Court for appointment as guardian of the proposed ward, S.H., for the limited purpose of making medical decisions. Specifically, Schimer filed 1). A Motion for Appointment of an Emergency Guardian with a Supplement and a Statement of Expert Evaluation pursuant to Supp.R. 66 and R.C. 2111.29; 2). Application for Appointment of Guardian of Minor, pursuant to R.C. 2111.03(C) with an Addendum, Probate Form 16 and Next of Kin of Proposed Ward, a Minor pursuant to R.C. 2111.04, Probate Form 15.0(A); Schimer's Affidavit pursuant to R.C. 3109.27, Probate Form 16.1; and Fiduciary's Acceptance Guardian, pursuant to R.C. 2111.14, Probate Form 15.2.

{¶3}   On July 10, 2013, a magistrate appointed a guardian ad litem for S.H. On July 11, the parents' attorney filed a motion to continue the emergency hearing for guardianship or convert that hearing to a pre-trial conference. Parents also filed a motion to have counsel appointed to represent them. Finally, also on July 11, 2013, the parents filed a motion to appoint an investigator to investigate the need for, or the

---

[1] For purposes of anonymity, initials designate father's, mother's and the child's name. See, e.g., *In re C.C.*, 10th Dist. Franklin App. No. 07-AP-993, 2008-Ohio-2803 at ¶1, n.1. Counsel should adhere to Sup.R.Rule 45(D) concerning disclosure of personal identifiers.

circumstances of the guardianship and file a report to the court pursuant to R.C. 2111.042.

{¶4} By Magistrate's Order filed July 11, 2013, the magistrate denied the parents' motion to continue the emergency hearing for guardianship. The magistrate found that the parents were duly notified of the hearing and "to delay a ruling to prevent significant injury to the minor, if ultimately found, is not in minors [sic.] best interest." The magistrates further found no authority to appoint counsel for the parents because the motions filed do not seek to permanently divest the parents of their parental rights and are civil in nature; therefore, the parents were not entitled to counsel at state's expense. Further, there is no statutory authority for the appointment of counsel for parents in a guardianship proceeding. The magistrate granted the parents' motions to appoint an Investigator and to appoint an attorney to represent S.H.

{¶5} Following an evidentiary hearing before the magistrate on the application held July 12, 2013, the magistrate directed that S.H. be examined by Akron's Children's Hospital. The magistrate further ordered the guardian ad litem "shall consult with Dr. Bodas and provide a recommendation to the Court regarding continuation and/or resumption or [sic.] chemotherapy for [S.H.]".

{¶6} On July 16, 2013, parents filed a motion to dismiss contending the case more properly belonged in the Juvenile Division of the Common Pleas Court pursuant to R.C. 2151. et seq. Parents also filed a motion to appoint Dr. Richard R. Mason, MS DO as an expert to assist the Court in alternative therapies available to S.H.

**{¶7}** On July 17, 2013, the parents filed a motion to dismiss contending R.C. 2111.02, the statute authorizing an emergency guardianship is unconstitutional "due to its language referring to 'an interested party' being void for vagueness."

**{¶8}** On July 18, 2013, Schimer filed responses to each of the parents' motions. By Magistrate's Order filed July 19, 2013, the magistrate granted the parents motion to appoint Dr. Mason as an expert witness. The court continued the hearing on the application for appointment of a guardian until July 26, 2013. By separate entry filed July 19, 2013, the magistrate overruled the parents' motion to dismiss for lack of jurisdiction. By Judgment Entry, filed July 24, 2013 the trial judge overruled the parents' motion to dismiss for lack of jurisdiction and motion to dismiss based upon the void for vagueness doctrine.[2]

**{¶9}** A full evidentiary hearing on the application was held before the trial court on July 26, 2013. The parties filed post-hearing briefs on July 29, 2013.

**{¶10}** The following facts were presented during the hearings before the trial court.[3]

**{¶11}** S.H. and her family are Amish. Her parents make their living raising and selling produce at a stand in front of their house. S.H. has seven brothers and sisters ranging in age from 12 years to 8 months. S.H. is the third oldest child. She just completed the fourth grade at an Amish School in the Black River school district. S.H. is ten years old.

---

[2] Parents have not appealed the trial court's rulings overruling their motions to dismiss. See, App.R. 4(B).
[3] Many of the facts were set forth in the Magistrate's Order filed July 12, 2013 and the trial judge's entry denying the application filed July 31, 2013.

{¶12} In April 2013, S.H. was admitted to Akron Children's Hospital for fatigue and an observable mass near her collarbone. After examination and testing, it was determined S.H. has a type of leukemia, T-Cell Lymphoblastic Lymphoma, Stage III. She had tumors in her neck, chest (mediastinum) and kidneys. The most significant concern was the mass in S.H.'s neck area, which prior to initial treatment, impacted her airway and caused her admission into the pediatric intensive care unit. Sarah's doctors recommended she undergo chemotherapy. The parents consented, but they testified the doctors did not fully explain to them the short-term and long-term effects of chemotherapy. According to the parents, the doctors also understated the risks to S.H.'s health if she underwent chemotherapy.

{¶13} Dr. Prasad Bodas testified that S.H.'s chemotherapy treatment has five separate phases: Induction (5 weeks), Consolidation (seven weeks), and Interim maintaince (eight weeks), Delayed Intensification (six weeks) and Maintenance (90 weeks). The total duration of the therapy is two years, three months. Dr. Bodas testified that with conventional treatment S.H. has an 85% likelihood of eradicating her cancer and recovering from her illness, i.e. surviving for five years or longer.

{¶14} S.H. completed the induction phase of her treatment and the first week of the consolidation phase. According to her parents, the effects from the chemotherapy were 'horrible" and "terrible." S.H. begged her parents to stop the treatments. Mother said she and Father could not stand to watch what was happening to their daughter.

{¶15} The parents believed chemotherapy was killing S.H. They had observed firsthand the effects of the treatment and they reconsidered (or became aware of) other long-term effects and risks to S.H. if she continued with treatment. Mother testified she

and Father prayed for S.H.'s health and prayed for wisdom to discern God's plan for her.

{¶16} In June, S.H.'s cancer had improved but she was still very sick from the side effects of the treatment. The parents decided to stop chemotherapy and to begin to treat S.H. through natural, holistic medicine. They informed Dr. Bodas of their decision.

{¶17} Dr. Bodas testified no conventional medical treatment would be as effective as the chemotherapy protocol he recommended. He said no alternative treatment, such as "natural" treatments would have any therapeutic effect on her cancer. If S.H. is not treated or if she is treated other than by chemotherapy, Dr. Bodas testified S.H. has no chance to survive her illness. S.H. will die in six months to a year. He testified a delay or interruption of her chemotherapy treatment increases the chances she will not survive her cancer if the treatment is resumed. He said S.H.'s cancer is growing and becoming more resistant to treatment.

{¶18} Dr. Bodes further testified there are short-term and long-term effects and appreciable risks from being treated with chemotherapy. The short-term effects include S.H.'s hair falling out, she will suffer fatigue and nausea and she will be at risk for uncontrolled bleeding and developing infections. The long-term concerns are that she will become infertile, and she will have a higher risk of developing cardiovascular disease. In addition, the treatment itself may damage her other organs and there is an increased risk of contracting other cancers. S.H. has a small but appreciable risk of dying from the treatment itself.

{¶19} Dr. Bodes told the parents he would not accept their decision to stop chemotherapy. Dr. Bodas made a referral to Medina County Job and Family Services in

June. The agency refused to file neglect or dependency charges against the parents. Dr. Bodes then referred the matter to the hospital's ethics committee and legal staff to have a guardian appointed to make S.H.'s medical decisions.

{¶20} On July 9, 2013, Schimer filed a motion for appointment of an emergency guardian for medical decision making for S.H. and an application for the appointment of a limited guardian for medical purposes. Schimer is an attorney and a registered nurse. Her primary occupation is general counsel for the Northeast Ohio Medical University. Schimer was approached by representatives of Akron's Children's Hospital to file the application.

{¶21} On July 12, 2013, the magistrate ordered the parents to take S.H. to Akron Children's Hospital for an evaluation. The examination revealed that the mediastinal tumor was smaller. The tumors in her kidneys had possibly been eradicated and the cancer in her abdomen was still present. The crucial factor according to Dr. Bodas was that the cancer was still present and still growing.

{¶22} The trial court conducted an in camera interview with S.H. In his judgment entry the trial judge noted,

[S.H.] said she wished to discontinue chemotherapy and to try natural things to see if they will help with her cancer. She said if the natural things do not work, maybe she would go back to having chemotherapy. But she said she does not want chemotherapy now for these reasons: it makes her very sick, it can damage her organs and it will make her unable to have babies.

{¶23} The trial court also admitted the Court Investigator's report and the report of the guardian ad litem. Both reports recommended S.H. resume chemotherapy.

{¶24} By Judgment Entry filed July 31, 2013, the trial court denied Schimer's application for limited guardianship.

{¶25} On August 5, 2013, Schimer filed a Notice of Appeal in the Ninth District Court of Appeals. The Ninth District Court of Appeals recused itself and the Ohio Supreme Court assigned this appeal to the Fifth District Court of Appeals effective August 7, 2013.

{¶26} On August 7, 2013, Schimer filed a Motion and Brief for an Injunction Pending Appeal seeking and order directing the parents to resume treatment at Akron Children's Hospital or at another recognized Children's Hospital in the area, during the pendency of the appeal. Parents filed a brief in opposition on August 14, 2013. By Judgment Entry filed August 14, 2013, this Court granted Schimer's motion for an injunction and ordered that the treatment of S.H. resume subject to modification or termination by this Court during the pendency of this appeal.

*Assignments of Error*

{¶27} Schimer raises two assignments of error,

{¶28} "I. THE TRIAL COURT INCORRECTLY DENIED MARIA SCHIMER'S APPLICATION TO BE [S.H.'S] LIMITED GUARDIAN WITH AUTHORITY TO CONSENT TO LIFE-SAVING MEDICAL TREATMENT.

{¶29} "II. THE TRIAL COURT INCORRECTLY DETERMINED THAT THERE WAS NO BASIS IN LAW OR FACT FOR THE FILING OF THIS ACTION."

I.

**{¶30}** Schimer's applied to the Medina County Probate Court for appointment of an emergency guardian and appointment of a limited guardian to make medical decisions for S.H. In denying this motion the trial court stated,

**{¶31}** There is no evidence the parents are unfit or unstable.

* * *

A guardianship may not be established solely because the child's "interests would be promoted thereby." Parents have a fundamental right to make medical decisions for their children: "[A] finding of parental unsuitability has been recognized by this court as a necessary first step in child custody proceedings between a natural parent and nonparent," *Hockstock v. Hockstock* (2002), 98 Ohio St.3d 238, Ohio Courts have determined that a guardianship may not be established unless a non-parent applicant establishes the parents abandoned the child, contracted away their custodial rights to the child or are otherwise unfit. *In re Guardianship of Stein* (2004), 105 Ohio St.3d 30.

* * *

The principle is well-settled. The Court cannot deprive these parents of their right to make medical decisions for their daughter because there is not a scintilla of evidence showing the parents are unfit.

* * *

**{¶32}** The issue presented in Schimer's first assignment of error is whether the trial court erred in finding that she was required to demonstrate parental unsuitability as a prerequisite to being appointed as a guardian for S.H.

**{¶33}** Schimer filed a petition in the probate court requesting to be appointed as guardian of S.H. for medical purposes pursuant to R.C. 2111.06. This statute provides,

A guardian of the person of a minor shall be appointed as to a minor having no father or mother, whose parents are unsuitable persons to have the custody of the minor and to provide for the education of the minor as required by section 3321.01 of the Revised Code, or whose interests, in the opinion of the court, will be promoted by the appointment of a guardian. A guardian of the person shall have the custody and provide for the maintenance of the ward, and if the ward is a minor, the guardian shall also provide for the education of the ward as required by section 3321.01 of the Revised Code.

**{¶34}** We apply a de novo standard of review upon an appeal of the trial court's interpretation and application of a statute, without giving deference to the trial court's determination. *State v. Trivette,* 195 Ohio App.3d 300, 2011-Ohio-4297, 959 N.E.2d 1065 (Wayne, 2011), ¶ 7; *State v. Sufronko*, 105 Ohio App.3d 504, 506, 664 N.E.2d 596 (4th Dist.1995); *State v. Woods,* 5th Dist. Licking No. 12-CA-19, 2013-Ohio-1136, ¶41.

**{¶35}** The primary purpose of the judiciary in the interpretation or construction of a statue is to give effect to the intention of the legislature, as gathered from the provisions enacted by application of well-settled rules of construction or interpretation. *Henry v. Central National Bank*, 16 Ohio St.2d 16, 20, 242 N.E.2d 342(1968). (*Quoting State ex rel. Shaker Heights Public Library v. Main*, 83 Ohio App. 415, 80 N.E.2d

261(8th Dist.1948)). It is a cardinal rule that a court must first look to the language itself to determine the legislative intent. *Provident Bank v. Wood*, 36 Ohio St.2d 101, 105, 304 N.E.2d 378(1973). If that inquiry reveals that the statute conveys a meaning that is clear, unequivocal and definite, at that point, the interpretive effort is at an end, and the statute must be applied accordingly. Id. at 105–106, 304 N.E.2d 378. In determining legislative intent, it is the duty of the court to give effect to the words used, not to delete words used or to insert words not used. *Columbus–Suburban Coach Lines v. Public Utility Comm*, 20 Ohio St.2d 125, 127, 254 N.E.2d 8 (1969). *See also, In re: McClanahan,* 5th Dist.Tusc. No. 2004AP010004, 2004–Ohio–4113, ¶16.

**{¶36}** R.C. 1.42 states: "1.42 Common and technical usage. Words and phrases shall be read in context and construed according to the rules of grammar and common usage. Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly."

**{¶37}** The word "shall" is usually interpreted to make the provision in which it is contained mandatory. *Dorrian v. Scioto Conservancy District*, 27 Ohio St. 2d 102, 107, 271 N.E.2d 834 (1971). In contrast, the use of the word "may" is generally construed to make the provision in which it is contained optional, permissive, or discretionary. *Id.* The words "shall" and "may" when used in statutes are not automatically interchangeable or synonymous. *Id.* To give the "may" as used in a statute a meaning different from that given in its ordinary usage, it must clearly appear that the Legislature intended that it be so construed from a review of the statute itself. *Id.* at 107– 108, 271 N.E. 2d 834. *In re: McClanahan,* supra at ¶ 17.

**{¶38}** The language of R.C. 2111.06 is clear and unambiguous on its face and needs no interpretation. In the case at bar, the trial court failed to apply the appropriate standard of review. Instead of reviewing the controlling statute, R.C. 2111.06, the trial court relied on case law holding that in a custody dispute between a parent and nonparent, the juvenile court must make a determination of parental unsuitability before awarding custody to a nonparent in a legal custody proceeding.

**{¶39}** Child custody disputes under Ohio law fall within the coverage of one of two statutes, depending on the circumstances—R.C. 3109.04 and 2151.23. *In re Hockstock*, 98 Ohio St.3d 238, 2002–Ohio–7208, 781 N.E.2d 971, ¶ 13. R.C. 2151.23(A)(2) grants juvenile courts exclusive original jurisdiction "to determine custody of any child not a ward of another court of this state." Id. at ¶ 15, 781 N.E.2d 971. R.C. 3105.011 gives domestic relations courts the jurisdiction "appropriate to the determination of all domestic relations matters." Id. at ¶ 14, 781 N.E.2d 971. R.C. 3109.04 dictates the rules and procedures for domestic relations courts to follow in child custody cases. Id.

**{¶40}** However, the case at bar is not a custody dispute at all. Rather, Schimer filed an application requesting to be appointed as guardian of S.H. for medical purposes pursuant to R.C. 2111.06.

**{¶41}** The trial court in the case at bar failed to consider R.C. 2111.06. Under R.C. 2111.06, there are three separate, disjunctive grounds for appointment of a limited guardian over a minor, (1) the minor has no parents, (2) the minor's parents are unsuitable or (3) if the minor's interests will be promoted by appointment of the guardian. Schimer sought a limited guardianship over S.H. based upon the third ground,

that S.H.'s "interests will be promoted by the appointment of a guardian." There is no requirement the trial court find the parents to be unfit or unsuitable before appointing a guardian on this ground.

{¶42} Because the trial court failed to even consider whether S.H.'s interests will be promoted by appointment of the guardian, we sustain Schimer's first assignment of error and remand this case to the trial court to make that determination without regard to the suitability of the parents.

II.

{¶43} In her second assignment of error, Schimer urges this Court to find the trial court erred in determining there was no basis in law or fact for the filing of the petition for guardianship. In light of our disposition of Schimer's first assignment of error, we find Schimer's second assignment of error to be premature.

{¶44} For the foregoing reasons, the judgment of the Medina County Probate Court is reversed in its entirety and this case is remanded for proceedings in accordance with our opinion and the law.

**{¶45}** We express our appreciation for the expeditiousness with which the courts and the parties have presented these matters. Upon remand, we are certain the trial court will give resolution of this matter the utmost priority.

By Gwin, P.J.,

Hoffman, J., and

Wise, J., concur

_____
HON. W. SCOTT GWIN

_____
HON. WILLIAM B. HOFFMAN

_____
HON. JOHN W. WISE

Sitting by Supreme Court Assignment

WSG:clw 0827

[Cite as *In re S.H.*, 2013-Ohio-3708.]

IN THE COURT OF APPEALS FOR MEDINA COUNTY, OHIO

NINTH APPELLATE DISTRICT

IN RE: GUARDIANSHIP OF
S. H.                                              :
                                                   :
                                                   :
                                                   :
                                                   :
                                                   :
                                                   :          JUDGMENT ENTRY
                                                   :
                                                   :
                                                   :
                                                   :          CASE NO. 13CA0057-M


For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Medina County Probate Court is reversed in its entirety and this case is remanded for proceedings in accordance with our opinion and the law. Costs to appellant.

It is ordered that a facsimile copy of this Opinion shall serve as the original.


_____
HON. W. SCOTT GWIN


_____
HON. WILLIAM B. HOFFMAN


_____
HON. JOHN W. WISE

Sitting by Supreme Court Assignment